Filed 11/8/17; Publication order 11/17/17 follows unmodified opinion (attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

THE PEOPLE,

    Plaintiff and Respondent,

       v.

DARYL ANTHONY HICKS,

    Defendant and Appellant.

G052778

(Super. Ct. No. 14NF2910)

ORDER MODIFYING OPINION;
NO CHANGE IN JUDGMENT

The court hereby orders that the opinion filed herein on October 25, 2017, be modified as follows:

1.    On page 4, second full paragraph, third sentence, "Marlene" is deleted and replaced with "Angelica" so the sentence reads:

"The first time she visited defendant's apartment with Aneglica, she did not know why they were going there."

2.    On page 4, third full paragraph, first sentence, "Angelica" is deleted and replaced with "Marlene" so the sentence reads:

"Marlene initially told defendant she was 18 years old, but he figured out that she was 16 years old, based on her year of birth, before they had sex a second time."

3.     On page 7, first half paragraph, first line, "nine" is deleted and replaced with "three" so the line reads:

"served); a concurrent sentence of three years (the upper term) on count 10; a consecutive"

4.     On page 8, last half paragraph, second line, add an opening parenthesis after "any" and before "film" so the line reads:

"any (film/filmstrip/photograph/negative/slide/photocopy/videotape/video laser"

5.     On page 9, first full paragraph, first sentence, "public" is deleted and replaced with "pubic" so the sentence reads:

"Sexual conduct means actual or simulated sexual intercourse or oral copulation, or anal intercourse, or anal oral copulation, or exhibiting of the genitals or the pubic, or the rectal area for the purpose of sexual stimulation of the viewer."

6.     On page 23, last full paragraph, fifth sentence, "defendant's" is deleted and replaced with "the court's" so the sentence reads:

"The Attorney General concurs, and we agree this was likely the court's intent."

This modification does not change the judgment.


MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.

Filed 10/25/17 (unmodified opinion)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DARYL ANTHONY HICKS,<br><br>    Defendant and Appellant. | G052778<br><br>(Super. Ct. No. 14NF2910)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Patrick Donahue, Judge.  Affirmed as modified.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Randall D. Einhorn and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

*          *          *

Defendant Daryl Anthony Hicks appeals from convictions of three counts of human trafficking of a minor, four counts of unlawful sexual intercourse with a minor more than three years his junior, one count of possession of a controlled substance, one count of possession of a firearm by a felon, and three counts of furnishing a controlled substance to a minor. He was sentenced to 19 years, four months in prison.

On appeal, he asserts numerous instances of instructional error and insufficient evidence to support one of the trafficking counts. He also argues the trial court abused its discretion by imposing the upper term on one of the trafficking counts, and claims the court failed to sufficiently state the reasons for imposing the upper term on various other counts. He also contends the court erred by not staying numerous counts pursuant to Penal Code section 654,[1] and states there is an error on the abstract of judgment. Of these, the only argument that has any merit is the error on the abstract of judgment, which we shall order corrected accordingly. In all other respects, the judgment is affirmed.

I

FACTS

During the relevant time period in 2013 and 2014, Angelica, age 17 at the time, and Jazmin, age 16 at the time, were residents at the Orangewood Children's Center (Orangewood). They would, on occasion, run away from Orangewood. In November 2013, they had been away from Orangewood for at least several days when they were at a bus stop at around 10:00 or 11:00 p.m. Defendant pulled over and asked if they wanted a ride. Jazmin described herself and Angelica as "desperate." They were looking for a ride to find a friend of theirs. Jazmin lied and told defendant she was 17 years old, so he would not believe she was a runaway. Defendant offered the girls marijuana and methamphetamine and told them he was a drug dealer. When the girls said they wanted

---

[1] Unless otherwise indicated, all subsequent statutory references are to the Penal Code.

2

methamphetamine, he drove them to his apartment and got the drugs for them. He then drove them to a laundromat where they believed they could find their friend, leaving them with a business card and offering to help if they needed anything.

Angelica called defendant back shortly thereafter, saying they needed a place to stay. Defendant picked up the girls, along with their friend Alex, and paid for a motel room for them.

The girls later had different recollections about what happened after they arrived at the motel room. Angelica testified the girls used the methamphetamine defendant provided for them that night. Defendant told her that he rented the motel room for them because he wanted to help her and Jazmin, and she believed him. Jazmin, however, testified that the "plan" was for her to sleep with defendant. She felt "disgusted" by the idea, but also felt she owed him for the ride, the drugs, and the room. While defendant began touching her in a sexual manner, they did not, ultimately, have sex that night. He slept in the other bed.

The next day, according to Angelica, she called defendant because she wanted more methamphetamine. Defendant asked for a picture of her breasts. She used a mobile telephone to take a picture of her bare breasts, and defendant subsequently delivered methamphetamine to her.

On another occasion, Angelica and Jazmin went to defendant's apartment. Defendant told Angelica to go on an errand, and Angelica believed it was because he wanted to have sex with Jazmin. Jazmin later testified defendant had sex with her on that occasion. Jazmin testified that she and Angelica had an agreement that Angelica would negotiate with defendant a price for sex with her. Jazmin later learned that defendant gave the money directly to Angelica. Before they had intercourse, defendant took a photo of her bare breasts.

After this occurred and Angelica returned, defendant sent Jazmin on an errand. He offered Angelica $80 for sex. She accepted and had sexual intercourse with

3

him.  She had told defendant that she was 17 years old at the time.  Over a period of months, defendant paid Angelica for sex approximately seven or eight times and to take naked photos of her twice.

The first time defendant took naked photos of her was while they were having sex.  Angelica wanted to "get it over with" and under defendant's direction, she opened her legs and defendant used a mobile phone camera to take photos of her vagina.  He did not pay her for the photos.  On another occasion, defendant took five naked photos of Angelica and paid her $50.

On some occasions, Angelica went to defendant's apartment with other runaways from Orangewood, Marlene and Bree.[2]  Marlene, who was 16 years old at the time, was also an occasional runaway from Orangewood.  The first time she visited defendant's apartment with Marlene, she did not know why they were going there.  She recalled Angelica saying something about picking up money.  Once she saw defendant and Angelica go into the bathroom, she understood that Angelica was being paid for sex.  Because she wanted money, she also had sex with defendant.  Angelica went into the bathroom while the sexual contact occurred.  Marlene did not recall exactly how much she was paid, but remembered it being more than $60.

Angelica initially told defendant she was 18 years old, but he figured out that she was 16 years old, based on her year of birth, before they had sex a second time.  He paid her for sex at least three more times, and Marlene agreed because she was on the run and needed money.  Additionally, defendant paid Marlene for naked photos, receiving approximately $60-$70.  Angelica was usually with her at defendant's apartment.

---

[2] Bree is a nickname.  Given the unusual nature of this minor's name, we use it here in the interests of protective nondisclosure.

At one point, Marlene heard defendant talking to Angelica "about joining a business." Marlene told defendant she wanted to live in Tijuana, but he became upset and told her they did not pay enough there, and she could make more money with him.

Like the other girls, Bree was also a resident at Orangewood. She was 17 years old at the relevant time, and friends with Angelica and Marlene. She had previously worked as a prostitute. At one point, she ran away with Angelica and Marlene to defendant's apartment. Angelica told Bree that defendant would pay for sex.

Bree asked defendant if he had crystal methamphetamine, but he did not, and gave her cocaine instead. Afterward, they discussed the amount defendant would pay her for sex. While she told him she was 18 years old, he did not believe her, and thereafter admitted she was 17 years old. After agreeing on a price, defendant gave her money and had sex with her.

Defendant tried to take photos of Bree's breasts and vagina while they were having sex, but she stopped him and said he would have to pay her. He agreed to pay her $10 for each photo and took two photos. At some point, defendant talked to Bree about going into business with him and asked if she wanted to make money with him. According to Bree, he acted like a pimp and used language similar to a former pimp. She told him no.

The situation came to law enforcement's attention when a deputy from the Orange County Sheriff's Department was called to Orangewood to investigate a possible rape. Marlene was the identified victim, and she provided defendant's name and address. Sex crimes investigators, after surveilling defendant and his apartment, arrested defendant. They found firearms, cocaine, drug paraphernalia, and a memory card containing digital images of girls, including those taken of Angelica, Marlene, and Bree. Approximately a dozen of the images were introduced at trial, including photos of the girls clothed individually and together, naked photos of their bodies, and close up photos of breast and vaginal areas.

Defendant was charged with three counts of human trafficking of a minor (§ 236.1, subd. (c)(1); counts 1, 2, and 6); four counts of unlawful sexual intercourse with a minor more than three years his junior (§ 261.5, subd. (c); counts 3, 4, 5, and 8), one count of possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a); count 9), one count of possession of a firearm by a felon (§ 29800, subd. (a)(1); count 10), and three counts of furnishing a controlled substance to a minor (Health & Saf. Code, § 11380, subd. (a); counts 11, 12, and 13).[3] The information further alleged that defendant had a prior conviction for violating § 470.

At trial, Robert Royce, a former law enforcement officer, testified as a human trafficking expert. The gist of his testimony was that a trafficked victim is a "slave" of the trafficker, who is kept isolated from friends and family members. Trafficking victims are not free to come and go, but are kept prisoner in a location such as a brothel. Traffickers maintain control by force, fear, and threats. Traffickers do not pay victims for sex or photos.

Royce also testified that a prostitute seldom maintains the money she is paid, which is taken by her pimp. A pimp also does not pay for sex or photos. But unlike a trafficker, a pimp has less control and allows more freedom. On cross-examination, Royce acknowledged that California law on human trafficking of minors had been amended in 2012, and did not require coercion, duress, or deprivation of liberty. Indeed, there were multiple ways to violate the statute.

At the conclusion of trial, defendant was convicted on each of the counts set forth above. He was eventually sentenced to a state prison term of 19 years, four months, comprised as follows: the upper term of 12 years on count 1; consecutive terms of two years, eight months (one-third the midterm) on counts 2 and 6; concurrent three year terms (the upper term) on counts 3, 4, 5, 8, and 10; 365 days on count 9 (time

_____

[3] Defendant was also charged with pandering with a minor over 16 years old. Pursuant to a defense motion under § 1118.1, this charge was dismissed.

6

served); a concurrent sentence of nine years (the upper term) on count 10; a consecutive two year sentence (one-third the midterm) on count 11; and concurrent nine year sentences (the upper term) on counts 12 and 13. Defendant was assessed various fines and fees, awarded presentence custody credits, and ordered to register pursuant to section 290. Defendant now appeals.

## II

## DISCUSSION

*CALCRIM Nos. 1244 and 1144*

Defendant claims the court erred in instructing the jury under CALCRIM No. 1244, which is the pattern instruction for causing a minor to engage in a commercial sex act under § 236.1, subdivision (c). He claims specifically that the court erred by including the statement "'being mistaken about the other person's age is not a defense to this crime,'" because when given with CALCRIM No. 1144, this instruction was both incorrect and confusing.

CALCRIM No. 1244, as provided to the jury, stated: "The defendant is charged in Count 1, 2, and 6 with causing, inducing, or persuading a minor to engage in a commercial sex act in violation of Penal Code section 236.1[, subdivision] (c).

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant caused or induced or persuaded another person to engage in a commercial sex act;

"2. When the defendant acted, he intended to commit a felony violation of Penal Code section 311.4;

"AND

"3. When the defendant did so, the other person was under 18 years of age.

"A commercial sex act is sexual conduct that takes place in exchange for anything of value.

7

"When you decide whether the defendant caused or induced or persuaded the other person to engage in a commercial sex act, consider all of the circumstances, including the age of the other person, her relationship to the defendant or defendant's agents, and the other person's handicap or disability, if any.

"The other person's consent is not a defense to this crime.

"Being mistaken about the other person's age is not a defense to this crime." (Some original punctuation omitted.)

CALCRIM No. 1144 is the pattern instruction for violations of sections 311.4, subdivisions (b) and (c), using a minor to perform prohibited acts. As provided to the jury, it stated: "1. The defendant promoted or employed or used or persuaded or induced or coerced a minor who was under 18 years old at the time to pose or model or assist others to pose or model, alone or with others;

"The defendant knew that he was promoting or employing or using or persuading or inducing or coercing a minor of that age to pose or model or assist others to pose or model;

"2. The purpose of the posing or modeling was to prepare matter containing or incorporating sexual conduct;

"3. The minor participated in the sexual conduct alone, or with other persons, or with animals;

"4. The defendant was aware of the character of the matter or live conduct;

"AND

"5. The defendant knew, or reasonably should have known, based on facts of which he was aware, that the minor was under 18 years of age;

"Matter means any representation of information, data, or image, including any film/filmstrip/photograph/negative/slide/photocopy/videotape/video laser disc/computer hardware or software/computer floppy disk/data storage medium/CD-

8

ROM/computer-generated equipment/or computer-generated image that contains any film or filmstrip).

"Sexual conduct means actual or simulated sexual intercourse or oral copulation, or anal intercourse, or anal oral copulation, or exhibiting of the genitals or the public, or the rectal area for the purpose of sexual stimulation of the viewer. An act is simulated when it gives the appearance of being sexual conduct." (Some original punctuation omitted.)

The court redacted language from CALCRIM No. 1144 which would have stated that defendant was charged with a violation of section 311.4, subdivision (c) (which he was not). The court also removed language stating the prosecution was required to prove each element to demonstrate defendant had committed a crime. (CALCRIM No. 1144.)

"When considering a claim of instructional error, we view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner. [Citation.]" (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.) The defendant must demonstrate the jury understood the instruction in the manner he claims. (*People v. Cross* (2008) 45 Cal.4th 58, 67-68.)

Defendant did not ask the court to clarify or modify the instructions he now claims were erroneous. While we agree with the Attorney General that this likely resulted in a waiver, we shall briefly address the argument on the merits.

Defendant contends that "where the specific sex crime incorporated into a section 236.1, subdivision (c) charge is one that requires knowledge the person is a minor, the 'mistake of age is not a defense' language contained in subdivision (f) of that section should have been omitted from the standard instruction defining a section 236.1, subdivision (c) offense." Thus, he claims that combining the mistake of age instruction with the knowledge requirement of a section 311.4, subdivision (c), violation was

9

incorrect or at least confusing. He argues the court essentially directed the jury to disregard the knowledge requirement of section 311.4, despite age being an essential element of the crime.

We disagree. The instructions, as given, were correct. One of the required elements of violating section 236.1, subdivision (c), as the jury was instructed with CALCRIM No. 1244, is that defendant "intended to commit a felony violation of Penal Code section 311.4." CALCRIM No. 1144 is definitional, in this context; it defines the acts that constitute a violation of section 311.4.

When given in this context, the jury was properly informed it was considering whether defendant had violated section 236.1, not section 311.4. The jury was not asked to decide whether defendant was committing a felony violation of section 311.4, only whether defendant acted with the intent to commit a violation of that section. Knowledge of the victim's age is not relevant in that context, and it is not reasonable to speculate the jury believed otherwise. The jury asked no questions and demonstrated no confusion. Thus, we find no error.

Even if we were to take the giant leap that the instructions were somehow erroneous, it was harmless even under *Chapman v. California* (1967) 386 U.S. 18, 24. The fact that the jury also found defendant guilty of unlawful sexual intercourse with each of these three victims establishes the jury believed the defendant knew or should have known each girl was more than three years younger than he was at the time of the offense. The jury was specifically instructed, using CALCRIM No. 1071, that defendant was not guilty of the offense if he actually believed the victim was 18 years old or older. Because in all three cases the photographs were taken after or while defendant had sex with the victim, it is not reasonable to believe the jury could have found defendant guilty on these charges without believing the prosecution had met its burden of proof on this point.

In sum, we find no reversible error with respect to this instruction.

10

*Instructions Regarding Lesser Included Offense*

Defendant next asserts the trial court erred by failing to sua sponte instruct the jury on the crime of using a minor to perform a prohibited act (§ 311.4, subd. (c)), as a lesser included crime of the human trafficking offenses charged in counts 1, 3, and 6. (§ 236.1, subd. (c).)

Defendant did not request instructions on lesser included offenses. Nevertheless, the trial court is obligated to instruct sua sponte on lesser included offenses that the evidence tends to prove. (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155 (*Breverman*).) "We have applied two tests in determining whether an uncharged offense is necessarily included within a charged offense:  the 'elements' test and the 'accusatory pleading' test. [Citation.]  The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater. [Citation.]  In other words, '"[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former."' [Citations.]  Under the accusatory pleading test, a lesser offense is included within the greater charged offense if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense. [Citations.]" (*People v. Bailey* (2012) 54 Cal.4th 740, 748.)

The court must instruct on any lesser included offense for which there is substantial evidence to support a conviction (*Breverman*, *supra*, 19 Cal.4th at p. 162), but not if the pertinent evidence is "minimal and insubstantial" (*People v. Springfield* (1993) 13 Cal.App.4th 1674, 1680).  "'In deciding whether evidence is "substantial" in this context, a court determines only its bare legal sufficiency, not its weight.'" (*People v. Moye* (2009) 47 Cal.4th 537, 556.)  When substantial evidence supports an instruction on a lesser included offense, the failure to so instruct is assessed for prejudice under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*Breverman*, *supra*, at pp. 148-149.)

11

As we have already discussed with respect to the first purported instructional error, section 236.1, subdivision (c), prohibits the human trafficking of a minor for a sex act. Under that statute, it is a felony to "cause[], induce[], persuade[], or attempt[] to cause" a minor "to engage in a commercial sex act," with an intent to violate enumerated statutes, including section 311.4. The statute can be violated regardless of whether the defendant reasonably believed that the victim was not a minor. (See, e.g., *People v. Branch* (2010) 184 Cal.App.4th 516, 522.)

As relevant here, section 311.4, subdivision (c), punishes anyone who, "with knowledge that a person is a minor under the age of 18 years . . . knowingly promotes, employs, uses, persuades, induces or coerces a minor under the age of 18 years . . . to engage in . . . either posing or modeling . . . for purposes of preparing any . . . image, including, but not limited to, any . . . photograph . . . involving[] sexual conduct by a minor."

We first address the statutory elements test. The crime of human trafficking of a minor can be committed without necessarily committing the crime of using a minor to perform a prohibited act. While a defendant must have the intent to violate section 311.4. subdivision (c), to commit human trafficking, there is no requirement that he or she actually do so. The mere *intent* to commit the prohibited act is enough. Accordingly, it is not necessary to commit the prohibited act offense to commit the trafficking offense.

With respect to the accusatory pleading test, the crime as actually charged did not include all of the elements of the lesser offense. The information alleged that as to each victim, defendant unlawfully caused, induced, or persuaded her to enter into a commercial sex act, specifically, using the minor for sex acts with the intent to violate section 311.4, subdivision (c). But again, all that is required is the intent, not the commission of a violation of section 311.4. Accordingly, it is not a lesser included offense of the human trafficking crime.

12

Further, once again, even if the failure to instruct was erroneous, it was harmless under *Watson*, *supra*, 46 Cal.2d 818. Defendant calls the testimony of the victims into question, but his argument on this point amounts to pure speculation. The evidence firmly, and essentially without contradiction, established defendant committed the human trafficking offense.

*Substantial Evidence of Human Trafficking Regarding Marlene*

Defendant next argues that there is no evidence establishing he took photographs of Marlene after he learned her true age. "When assessing a challenge to the sufficiency of the evidence, we apply the substantial evidence standard of review, under which we view the evidence 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find defendant guilty beyond a reasonable doubt.' [Citations.]" (*People v. Haraszewski* (2012) 203 Cal.App.4th 924, 939.)

As we have discussed at some length, section 236.1, subdivision (c), prohibits the human trafficking of a minor for a sex act. Under that statute, it is a felony to "cause[], induce[], or persuade[], or attempt[] to cause" a minor "to engage in a commercial sex act," with an intent to violate enumerated statutes, including section 311.4. Although section 236.1, subdivision (f), states: "Mistake of fact as to the age of a victim of human trafficking who is a minor at the time of the commission of the offense is not a defense to a criminal prosecution under this section," defendant's entire argument on this point is that the prosecution failed to establish defendant photographed Marlene after he learned of her true age.

This point is simply without merit. There was sufficient evidence to establish defendant paid Marlene for sex, and for the naked photos he took. It is immaterial whether he learned of her true age before or after he took the photos. All that

13

is required to violate the statute is that he had the *intent* to violate section 311.4 at the time he took the naked photographs. Actual commission of the section 311.4 offense was not required.

Further, were it necessary, it can be reasonably inferred from all of the surrounding facts that the defendant was aware that Marlene was under 18 years old. She was friends with Angelica, a runaway from Orangewood, who, by definition, was likely to be a minor. The evidence was uncontradicted that defendant knew that Angelica, Jazmin, and Bree – all of the other girls he had met from Orangewood – were under the age of 18. Thus, the jury, had it been necessary, could reasonably infer the same here. There is substantial evidence to support defendant's conviction on count one.

*Accomplice Instructions*

Defendant next argues the court erred by refusing defendant's request to provide accomplice instructions. Defendant argued, for example, that because Angelica had brought the other girls to defendant's residence, she was an accomplice, requiring the corroboration of her testimony. He also argued that since Angelica went into the bathroom while defendant had sex with Marlene, she was encouraging the offense. The prosecutor argued that as a minor, Angelica, could not be subject to prosecution for the same offenses. Further, under Evidence Code section 1161, evidence that a trafficking victim engaged in a commercial sex act as a result of being a victim could not be used against her. The trial court ultimately declined the instruction, explaining: "When the court heard all the evidence in this case, I don't believe any of these girls could have been prosecuted for these offenses as accomplices. I don't think the evidence substantiates it. . . . [T]he law is . . . there to protect minors. And . . . all the four girls were minors. I don't think accomplice applies to it."

"A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the

14

commission of the offense . . . . [¶] An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant . . . ." (§ 1111.)

What defendant's argument completely ignores, however, are the grounds the trial court relied upon when refusing the requested instruction. "'It has long been settled that where a penal statute expressly outlaws conduct against minors, a minor who is a victim of the proscribed conduct is not an accomplice and the jury need not be instructed that the minor's testimony requires corroboration.' [Citations.]" (*People v. Tobias* (2001) 25 Cal.4th 327, 334 (*Tobias*), italics omitted.) "The rationale underlying this rule is that prosecution of the minor for cooperating with the defendant would be inconsistent with the purpose of the law, which is to protect the minor. Because the minor, even if a willing participant in the defendant's conduct, is a victim and cannot be prosecuted as an accomplice, accomplice instructions are not appropriate." (*Ibid.*)

With respect to the human trafficking offense, there is no question that section 236.1, subdivision (c), expressly outlaws conduct against minors. "A person who causes, induces, or persuades, or attempts to cause, induce, or persuade, a person who is a minor at the time of commission of the offense to engage in a commercial sex act, with the intent to effect or maintain a violation of Section . . . 311.4 . . . is guilty of human trafficking." Further, Evidence Code section 1161 provides that evidence that a human trafficking victim engaged in a commercial sex act as a result of being a victim is inadmissible against him or her. Thus, not only is the statute expressly designed to protect minors, they cannot be liable for prosecution for that offense. Thus, no accomplice instructions were required on the human trafficking counts.

The same applies to section 261.5, subdivision (c), unlawful sexual intercourse with a minor more than three years younger than defendant: "Any person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony . . . ." Again, by its plain language, this statute was intended to protect minors and expressly

15

outlaws conduct against them. Evidence Code section 1161 also applies here. Accordingly, an accomplice instruction was not appropriate.

Defendant was convicted of three counts of furnishing a controlled substance to a minor. (Health & Saf. Code, § 11380, subd. (a).) "Every person 18 years of age or over . . . who unlawfully furnishes, offers to furnish, or attempts to furnish those controlled substances to a minor shall be punished by imprisonment . . . ." (Health & Saf. Code, § 11380, subd. (a).) Once again, this statute is specifically aimed at protecting minors from an adult furnishing illegal drugs to them. No accomplice instruction was necessary.

At trial, defendant conceded none of the minors (specifically Angelica) were accomplices as to the possession of the gun, leaving us to address one final count: misdemeanor possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a).) Defendant offers no specific argument on appeal that an accomplice instruction was required as to this count, and none was required, as there was no evidence any of the girls was an accomplice to this offense. The evidence demonstrated defendant already had marijuana and methamphetamine in his possession on the night he met Angelica and Jazmin. Further, any error was harmless under *Watson*, *supra*, 46 Cal.2d at pages 836-837. If a witness's testimony is sufficiently corroborated, no reversible error occurred. (*People v. Lewis* (2001) 26 Cal.4th 334, 370.) Here, all four victims gave testimony sufficient to establish that defendant was in possession of illegal drugs, and drugs were found by the police when defendant's home was raided by the police. This is adequate corroboration under the law.

*Imposition of Aggravated Term Regarding Marlene*

All of defendant's remaining arguments address sentencing. He first challenges the court's decision to impose a 12-year sentence on count 1, human trafficking as to Marlene. The court indicated the reason for its decision was that

16

defendant's prior convictions were numerous and of increasing severity. (Cal. Rules of Court, Rule 4.421(b)(2).)[4] Defendant asserts this was an abuse of discretion.

Both the prosecution's sentencing brief and the probation report listed defendant's prior offenses. Defendant was 57 years old at the time of sentencing. Those offenses included:[5] misdemeanor assault (§ 240) in 1983, for which defendant was sentenced to three years on probation; felony burglary (§ 459) in 1986, for which he was sentenced to 270 days in jail and three years on probation; felony forgery (§ 470) in 1997, for which he was sentenced to 12 days in jail and three years on probation; felony fraudulent use of credit cards in Nevada in 1997, for which he was sentenced to three years of probation with 12 to 24 months of state prison time suspended;[6] felony possession of a firearm by a felon in 1999, for which he was sentenced to one year in jail and three years on probation; misdemeanor solicitation of a prostitute (former § 647, subd. (b)) in 2000, for which he was sentenced to 12 months of informal probation; felony illegal possession of ammunition (former § 12316, subd. (b)(1)) in 2003, for which he was sentenced to three years on probation; and an out-of-state conviction in 2008 for possession of a controlled substance, resulting in a suspended prison sentence and fine.

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . . The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected . . . ." (§ 1170, subd. (b).) Insofar as imposition of the upper term is concerned, "[a]n aggravating circumstance is a fact that makes the

---

[4] Subsequent references to court rules are to the California Rules of Court.

[5] Several misdemeanor Vehicle Code offenses are omitted.

[6] His record reflects a "dishonorable discharge" from probation.

offense 'distinctively worse than the ordinary.' [Citations.] Aggravating circumstances include those listed in the sentencing rules, as well as any facts 'statutorily declared to be circumstances in aggravation' [citation] and any other facts that are 'reasonably related to the decision being made.' [Citation.]" (*People v. Black* (2007) 41 Cal.4th 799, 817; see Rules 4.408(a), 4.421.)

A trial court's sentencing decision is subject to review for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "[A] trial court will abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision. [Citations.]" (*Ibid*.) "'The circumstances utilized by the trial court to support its sentencing choice need only be established by a preponderance of the evidence. [Citations.]' [Citation.] Accordingly, in determining whether a trial court abused its discretion . . . we consider, in part, whether there is sufficient, or substantial, evidence to support the court's finding that a particular factor was applicable. [Citation.]" (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1313, disapproved on another ground in *People v. Cook* (2015) 60 Cal.4th 922, 939.)

Defendant's argument is that "while it can be argued that the current crimes were of increasing seriousness, as noted by counsel, the prosecution originally offered a maximum eight-year term prior to trial." He then goes on to recite the facts of this case, minimizing them, arguing that "with the exception of the first encounter, this was not a situation where [he] preyed on these girls in an outside setting and lured them to his home." In a rather shameless display of victim blaming, he points out that Angelica initiated the call that led her and Jazmin to defendant's apartment, and that Angelica "initiated all further contact with" defendant. He "never used force or violence." The offenses, he asserts, were "the lowest" of any kind of human trafficking.

These arguments are entirely irrelevant. The only question here is whether the court used a proper basis to impose an aggravated sentence. The reason the court identified, that prior convictions were numerous and of increasing severity, is amply

18

supported by the uncontroverted evidence. The existence of one aggravating factor is sufficient to support imposing the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 817.) We find no abuse of discretion.

*Reasons for Imposition of Aggravated Terms on Other Counts*

Defendant also claims the court erred by failing to state reasons for imposing the aggravated concurrent terms on counts 3 through 5 and 8 (unlawful sexual intercourse with Marlene, Angelica, Jazmin, and Bree, respectively); count 10 (possession of a firearm by a felon); and counts 12 and 13 (furnishing a controlled substance to Jazmin and Bree, respectively). He asserts "the court was silent." If true, this would require a remand for the court to state its reasons on the record. (See § 1170, subd. (c).)

The fundamental flaw with defendant's argument is that the court did state its reasons on the record: "Count 3, [section] 261.5, victim, Marlene, the court will select the aggravated term pursuant to [Rule] 4.421(b)(2). The aggravated term is three years. That's to run concurrent to all other counts." This was the same reason the court gave for selecting the aggravated term as to count 1, as we discussed above. The court continued: "Count 4, violation of [section] 261.5, victim, [Angelica], the court selects the aggravated term of three years pursuant to [Rule] 4.421(b)(2). Aggravated term is three years. That's to run concurrent to all other counts." The court continued similarly through counts 5, 8, 10 and 12, identifying Rule 4.421(b)(2) as the reason for imposing the aggravated term. As to count 13, the court did not impose an aggravated term at all, but stated it "will select one-third the mid term. It's two years." Accordingly, we find no error.

19

*Section 654*

Defendant next asserts that the court erred by failing to stay sentence on counts 3, 4, and 8 (unlawful sexual intercourse with a minor more than three years his junior (as to Marlene, Angelica, and Bree, respectively); and counts 11, 12, and 13 (furnishing a controlled substance to a minor as to Angelica, Jazmin, and Bree, respectively).[7] Defendant asserts he had one objective and his actions comprised a single course of conduct as to each victim, which was reflected in the trafficking counts, and therefore, sentence on other counts should be stayed.

Section 654, subdivision (a), provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." This statute "prohibits punishment for two crimes arising from a single, indivisible course of conduct. [Citation.]" (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) The purpose of section 654 is to ensure that a defendant's punishment is commensurate with his culpability and that he is not punished more than once for what is essentially one criminal act. (See *People v. Latimer* (1993) 5 Cal.4th 1203, 1211.)

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor" (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on another ground in *People v. Correa* (2012) 54 Cal.4th 331, 334), not the temporal proximity of the offenses (*People v. Capistrano* (2014) 59 Cal.4th 830, 886).

Indeed, "a finding that multiple offenses were aimed at one intent and objective does not necessarily mean that they constituted 'one indivisible course of

---

[7] With the exception of count 11, for which defendant was sentenced to two years consecutive to his other time in custody, all other relevant charges were sentenced concurrently.

20

conduct' for purposes of section 654. If the offenses were committed on different occasions, they may be punished separately." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.) "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken. [Citation.]" (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935 (*Gaio*).)

"Because of the many differing circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an 'act or omission,' there can be no universal construction which directs the proper application of section 654 in every instance." (*People v. Beamon* (1973) 8 Cal.3d 625, 636.) In cases involving sex offenses, courts have found that "[e]ven where the defendant has but one objective—sexual gratification—section 654 will not apply unless the crimes were either incidental to or the means by which another crime was accomplished. [Citations.] [¶] [S]ection 654 does not apply to sexual misconduct that is "preparatory" in the general sense that it is designed to sexually arouse the perpetrator or the victim. [Citation.]" (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006.)

Whether a defendant harbored a separate intent and objective for each offense is a factual determination for the trial court, and its conclusion will be sustained on appeal if supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730.) On review of this issue, we consider the evidence in the light most favorable to the judgment. (*People v. Williamson* (1979) 90 Cal.App.3d 164, 172.)

We approach this victim by victim. With respect to Marlene, defendant was convicted of human trafficking, unlawful sexual intercourse, and furnishing a controlled substance to a minor. He argues the latter two counts should be stayed. Defendant had sex with Marlene the first time he met her, but he did not take photographs at that time. The record does not suggest that he took the photos during

21

intercourse. Accordingly, given the separation in time between the crimes, and defendant's opportunity to reflect, section 654 does not apply to these counts. (*Gaio*, *supra*, 81 Cal.App.4th at p. 935.) Defendant's own argument defeats his claim with respect to the furnishing of illegal drugs. Defendant asserts the furnishing of the drugs was part of his objective which was "sexual in nature." We interpret that as meaning the drugs were meant to arouse the victims, and was "'preparatory'" in nature. (*People v. Alvarez*, *supra*, 178 Cal.App.4th at p. 1006.) Such conduct is not subject to section 654.

As to Angelica, the same three offenses are at issue. The evidence demonstrates that defendant furnished methamphetamine to Angelica the night he met her and Jazmin at the bus stop. He told them he was a drug dealer, and went to his apartment to get methamphetamine for them. He also gave Angelica methamphetamine the next day, when he met her after she called him, in exchange for a photo of her breasts that she took with a mobile phone. Defendant did not have sex with Angelica that day, either. The first time he had sex with her was when she and Jazmin came to his apartment. Accordingly, given the temporal separation of the crimes, we find there was no error with respect to the application of section 654 as to the drug offense. (*Gaio*, *supra*, 81 Cal.App.4th at p. 935.)

Defendant had sex with Angelica on seven or eight different occasions, and he took photos of her twice. On one occasion, photos were taken during sex. The record is silent, however, as to whether sex was involved the second time he took photos of her. The photos of Angelica are both clothed and naked, as well of clothed photos of her with both Marlene and Bree. Taken as a whole, we cannot say the sexual intercourse and the photography were part of an indivisible course of conduct, as there was, at a minimum, some temporal separation between them. (*Gaio*, *supra*, 81 Cal.App.4th at p. 935.)

The same offenses are at issue with respect to Bree. The record shows defendant gave Bree cocaine, and then they discussed exchanging money for sex. For the same reason as discussed with respect to Marlene, we conclude this was "'preparatory'"

22

in nature and not subject to section 654. (*People v. Alvarez*, *supra*, 178 Cal.App.4th at p. 1006.) As to the photos, Bree refused to let defendant photograph her when they had sex for the first time. She only agreed after he said he would pay her. This, again, reflects a temporal separation and time for the defendant to consider and renew his intent. (*Gaio*, *supra*, 81 Cal.App.4th at p. 935.) We find no error with regard to section 654.

Finally, with respect to Jazmin, defendant was convicted of unlawful sexual intercourse with a minor more than three years his junior, and furnishing a controlled substance. Substantial evidence, however, shows that while he furnished drugs to Jazmin on the night they met, he did not have intercourse with her until the next day. This was not a single course of conduct. Regardless of defendant's attempts to have sex with Jazmin the first night, he was not charged with nor convicted of an attempt offense. He was convicted for having sex with her the next day and thereafter. Accordingly, the separation in time defeats defendant's claim of section 654 error. (*Gaio*, *supra*, 81 Cal.App.4th at p. 935.)

*Correction of Abstract*

Defendant correctly points out that the abstract of judgment includes an error on count 11, furnishing a minor with cocaine in violation of Health and Safety Code section 11380, subdivision (a). At sentencing, the court orally imposed a sentence of "the mid term of two years" to run consecutive to count 1. The sentence was reflected on the abstract as the "consecutive full term," which is three, six, or nine years, even though the sentence was properly recorded as two years. Defendant argues the court intended to impose a sentence of one-third the midterm. The Attorney General concurs, and we agree this was likely defendant's intent. We have the inherent power to order such errors corrected at any time, and we will order the correction.

23

The Attorney General also argues there was a miscalculation as to defendant's total sentence.  But what appears to have been overlooked is a subsequent minute order addressing this discrepancy and no further correction is necessary.

III

DISPOSITION

The clerk of the court is ordered to prepare an amended abstract of judgment to reflect a consecutive sentence of one-third the midterm on count 11 (2 years, with the "1/3 Consecutive" box checked) and to forward a corrected certified copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.


24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G052778 |
| v. | (Super. Ct. No. 14NF2910) |
| DARYL ANTHONY HICKS, | ORDER GRANTING REQUEST FOR PUBLICATION |
| Defendant and Appellant. | |

Respondent has requested that our opinion filed on October 25, 2017, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.