Filed 8/6/24  P. v. Martinez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANGEL ARTURO MUNOZ MARTINEZ,<br><br>Defendant and Appellant. | F085332<br><br>(Super. Ct. No. MCR073902)<br><br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Matthew J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Brook A. Bennigson and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P. J., Franson, J. and Smith, J.

Defendant Angel Arturo Munoz Martinez was convicted by a jury of voluntary manslaughter and found to have used a weapon during the commission of the offense. The jury made no findings regarding aggravating circumstances. The trial court sentenced defendant to the upper term of 11 years.

On appeal, defendant contends the trial court erred in imposing the upper term without consideration of proved circumstances in mitigation and based on circumstances in aggravation not found true by the jury, stipulated to by the parties, or based on certified records of prior convictions as required by Penal Code section 1170, subdivision (b)[1] as modified by Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567). The People disagree. We affirm.

## PROCEDURAL SUMMARY

On June 6, 2022, the Madera County District Attorney filed an information charging defendant with the murder of Andres Espejo, Jr. (§ 187, subd. (a); count 1). The information further alleged defendant used a deadly weapon in the commission of the offense (§ 12022, subd. (b)(1)). The information also alleged one circumstance in aggravation: defendant was armed with or used a weapon at the time of the commission of the crime. (Cal. Rules of Court, rule 4.421(a)(2).)[2]

On September 22, 2022, the jury found defendant not guilty of first and second degree murder, but guilty of the lesser-included offense of voluntary manslaughter (§ 192, subd. (a)) and found true that he had personally used a deadly weapon. The jury made no separate finding on the use of a weapon circumstance in aggravation alleged in the information or on any other circumstance in aggravation.

On November 9, 2022, the trial court sentenced defendant to a term of 11 years (the upper term) on count 1. The court also imposed and stayed pursuant to section 654 a

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     All further rules references are to the California Rules of Court.

2.

one-year weapon enhancement on count 1.  The court found the following circumstances in aggravation and in mitigation true:  in aggravation, "defendant was armed with a deadly weapon, personally used a deadly weapon at the time of the offense, … was on probation in Case N[o.] CCR057755, which is a case before the Court right now, and that based upon this new case, his performance on probation has been unsatisfactory";[3] in mitigation, "his prior record is minimal[.]"  The court declined to find true the other circumstances in mitigation that defendant contended applied:  that Espejo was a willing participant or provoker in the incident (rule 4.423(a)(2)), the offense was unlikely to recur (rule 4.423(a)(3)), defendant mistakenly believed his conduct was legal (rule 4.423(a)(7)), and defendant was suffering from a mental condition that significantly reduced his culpability (rule 4.423(b)(2)).

On November 17, 2022, appellant filed a notice of appeal.

## FACTUAL SUMMARY

**The Prosecution's Case**

V.M. was in a dating relationship with Espejo for approximately one and a half years, from about early 2020 to July or August 2021.  They remained friendly after their relationship ended and would sometimes "get together."  By October 2021, V.M. had begun dating defendant.  They dated for approximately six or seven months.  Their relationship ended in February 2022, but they remained friendly after.  Espejo and defendant both lived walking distance from V.M.'s home in Madera and would visit her without an invitation.

On February 13, 2022, V.M. stayed at defendant's home.  While she was upstairs and she believed defendant was downstairs drinking alcohol with his friends, she noticed defendant and Espejo fighting across the street from defendant's home.  Defendant

_____

[3]     On its own motion, the trial court took judicial notice of defendant's prior criminal case in Madera Superior Court case No. CCR057755.

3.

attempted to break a beer bottle on Espejo. V.M. came downstairs and stopped the fight. V.M. was in a dating relationship with defendant at that time so she stayed at his home after the fight concluded.

On Easter Day 2022, V.M.'s friend hosted a party for the friend's daughter. V.M. and Espejo attended the party. Espejo got himself a plate of food and then "took off walking." Approximately an hour and a half later, defendant saw V.M. at the party as he and his sisters drove by in defendant's sister's burgundy van. V.M. told defendant to leave because she was not on good terms with him at that time. Defendant and his sisters then drove away. About 10 or 15 minutes later, defendant returned in the same van. He walked to the fence at the front of the property and V.M., who was seated on the porch, walked to the fence to meet him. He told her that he wanted her to leave the party with him and go to his home. V.M. said no, and defendant "got upset." They argued through the fence and, after V.M. calmed down, she walked around the fence to tell defendant she did not want to have the conversation there. Defendant then hit V.M on her jaw with a closed fist. People at the party saw defendant hit V.M. and moved closer. Espejo "happened to be walking by at the time" and he came to help V.M. Espejo and defendant fought. Espejo held an aluminum tube during the fight. When he tried to hit defendant, sand sprayed from the tube. V.M. did not see whether Espejo actually hit defendant with the tube. She did see that four other people attempted to make defendant leave by "tossing" him away, but defendant kept coming back. Defendant told V.M. that if she did not go home, he would "beat [her] ass." V.M. did not see what happened next because she fainted and awoke in the bathroom of her friend's home.

The day after the scene at the Easter Day party, V.M.'s friend Elliot, who was involved in "toss[ing]" defendant, gave V.M. a black folding knife inscribed with the word " 'Black.' " She kept the knife in her purse for protection. Sometime in the next several days, defendant took the knife from V.M.'s purse while she was in his car, telling her he needed it for his new job.

4.

On May 15, 2022, V.M. had made plans to see Espejo in the evening, but they had not decided on a time. In the afternoon on the same date, V.M. contacted defendant for a ride to a convenience store to buy chips. Defendant agreed and took V.M. and her younger sister, Y.M., to the store at approximately 5:00 p.m. On the way back from the store, V.M. and defendant had a disagreement regarding the music to play on the car stereo. She could tell defendant was upset. Defendant planned to drop V.M. off at home by way of the alley behind her home. However, when they arrived, a black truck blocked the alley, so defendant drove V.M. and her sister to the front of the apartment complex. As defendant drove, Espejo emerged from the apartment complex and moved away from the complex on the sidewalk. Defendant stopped the vehicle six or seven feet from Espejo, took something from his pocket or the side of his body, and ran toward Espejo. V.M. exited the vehicle, ran to her apartment and back—which took only a matter of seconds—and saw defendant stab Espejo twice. When defendant stabbed Espejo, Espejo had nothing in his hands and was backing away. Espejo said, " '[y]ou got me,' " removed his shirt, and used it to put pressure on the stab wounds, and collapsed several steps away; defendant reentered his vehicle, told V.M. that he hoped Espejo would die, and left; and V.M. went to Espejo and yelled for help.

The first police officer to arrive on scene attempted to administer lifesaving measures to Espejo, but at the first chest compression it became clear to the officer that lifesaving measures would not be successful due to the extent of Espejo's wounds. The officer concluded that Espejo was deceased.

Espejo suffered three stab wounds: the first, to his center mid-chest, going through the sternum and perforating his aorta; the second, to his left mid-chest area, penetrating his lung; and the third, to his left lower chest, incising his diaphragm and striking his spleen. Any of those injuries alone could have been fatal.

On May 15, 2022, between 5:00 p.m. and 6:00 p.m., defendant called his brother J.M., said he was in trouble, and asked for money from J.M. and their other brother A.M.

J.M. and A.M. met defendant at a gas station in Fresno.  Defendant appeared to be worried and "walking around a lot."  Defendant eventually told A.M. and J.M. that he had "knifed someone."

At approximately 8:00 p.m. or 9:00 p.m. on the same date, Madera Police Detective Hector Garibay found the van that defendant used during the stabbing.  When he searched the van, Garibay found blood drops on the roof above the driver seat, V.M.'s cell phone on the front passenger floorboard, and a black tank top in the cargo area that contained a bloody folding knife.  Defendant's fingerprint was found on the knife.

On the morning of May 16, 2022, Garibay took defendant into custody at a different home in Madera.  Defendant told Garibay "he had made a mistake, and he stated that he ran because he was scared."

**The Defense Case**

Defendant testified that he met V.M. on February 16, 2021, and they began dating in March 2021.  V.M. told defendant of her previous relationship with Espejo.  She said that Espejo mistreated and beat her.  In November 2021, V.M. told defendant that Espejo was stalking her.

On February 12, 2022, defendant and V.M. went to a convenience store to buy soda.  Espejo approached him from behind and said, " 'Happy birthday, Primo.' "  That was the first time the two men had met.  The following day, Espejo walked down the sidewalk in front of his apartment and defendant believed he was looking for V.M.  Defendant had never seen Espejo pass by his apartment before.  He approached Espejo and asked "what his problem was."  Espejo responded that V.M. "was his."  Defendant responded that V.M. lived with him.  Espejo lunged toward defendant and hit him.  The two struggled against each other until V.M. broke up the fight.  After the fight, Espejo shouted things at defendant that defendant understood to mean that Espejo used to be a gang member.

Defendant went to the party on Easter Sunday 2022. But he was not angry with V.M. She was upset with him because he could not celebrate with her the prior day because he was scheduled to work. When defendant arrived at the party, he had been drinking alcohol but he was not drunk. He did not hit V.M. that day and had never hit her. However, when V.M.'s friend approached, defendant told her to "mind her business." Defendant then got into a fight with two other men at the party. During the fight, defendant saw Espejo crossing the street with a metal tube. Espejo swung the metal tube at defendant and defendant raised his hand to defend himself. Espejo hit him in the hand with the tube three times. The other men defendant was originally fighting also hit defendant.

On May 14, 2022, V.M. gave defendant a black knife and said it was for his work.

On May 15, 2022, V.M. sent defendant a message saying she was going to go with "her baby" to Fresno. Defendant understood that to mean she was going with another person to Fresno. She also sent defendant a message calling him "Andres." Later that day, V.M. asked defendant to take her to the convenience store to buy chips for her daughter. Defendant did so even though he had been upset with her earlier in the day. When defendant asked V.M. at the convenience store why she had called him "Andres," she told him to " '[c]alm down.' " They did not speak on the ride back from the store and defendant felt "depressed."

When defendant approached V.M.'s apartment complex, they saw Espejo and V.M. said, " 'Oh, my God.' " Defendant wanted to fight him because "he was looking for [V.M.]" Defendant did not know that V.M. and Espejo might be dating. Defendant stopped the vehicle and Espejo stopped moving. Defendant got out of the vehicle and Espejo walked toward him. When the two men were approximately six feet from each other, Espejo made a motion as "if he had a gun" in his waistband. Defendant was scared Espejo would kill him so he took out his knife. Defendant made a stabbing motion to scare Espejo away. He was unsure whether he stabbed Espejo at that time or not. Espejo

7.

then backed away and moved his hand to his waist again. Defendant did not realize that he had stabbed Espejo. He thought Espejo might have been reaching for a gun. Espejo grabbed defendant and tried to hit him. Defendant responded by stabbing Espejo twice. Espejo soon fell over. Defendant told V.M. that she got "what she was after [¶] … [¶] [t]hat one of [them was] injured." Defendant ran to the van and fled.

Soon after, defendant spoke to his siblings and decided to return to Madera to turn himself in.

## DISCUSSION

Defendant contends that the trial court erred in imposing the upper term because it (1) disregarded mitigating circumstances, (2) double counted possession *and* use of a deadly weapon as circumstances in aggravation, and (3) relied on two aggravating circumstances that were unfounded because they were not based on the fact of prior convictions proved by certified records, stipulated to by the parties, or found true by the jury. The People respond that the trial court properly stayed the weapon enhancement and relied on the jury's true finding on that enhancement allegation to find the use of a weapon circumstance in aggravation true and relied on the exception set forth in section 1170, subdivision (b)(3) by taking judicial notice of defendant's prior conviction in the case before it to find the other circumstances in aggravation true. The People do not respond to defendant's contentions that the court counted the possession and use of a deadly weapon circumstance in aggravation twice or that the court disregarded appropriate circumstances in mitigation.

We agree with the People that the circumstances in aggravation were found true in conformity with section 1170 and we conclude that the trial court did not abuse its discretion in not crediting defendant's proposed circumstances in mitigation.

## I. Additional Background

The information alleged a single circumstance in aggravation: defendant was armed with or used a weapon at the time of the commission of the crime. (See

rule 4.421(a)(2).) Despite only the single circumstance in aggravation having been pled, the probation report recommended that the trial court find the following circumstances in aggravation: defendant's prior convictions were numerous and increasing in seriousness (rule 4.421(b)(2)); defendant was on probation when the crime was committed (rule 4.421(b)(4); and defendant's performance on probation was "unsatisfactory as evidenced by his commission of new criminality" (rule 4.421(b)(5)).

Defendant's trial counsel objected to consideration of defendant's criminal history because the trial court did not have before it a certified record of defendant's prior convictions. The court responded that it had "CCR057755"—which, according to the probation report and defense counsel's response to the court, was the case in which defendant was convicted of driving under the influence of alcohol—"on calendar, and that [was] better than a certified record, that [was] the actual file of conviction and the fact that [defendant] was on probation at the time." The court took judicial notice of that case.

The trial court found true "the following circumstances in aggravation: … defendant was armed with a deadly weapon, personally used a deadly weapon at the time of the offense, … defendant was on probation in [c]ase N[o]. CCR057755, which [was] before the [trial] [c]ourt [at the time of sentencing], and that based upon this new case, his performance on probation ha[d] been unsatisfactory …."

Defendant argued in his sentencing brief that the trial court should find true the following circumstances in mitigation: "[t]he victim was an initiator o[r] willing participant in, or aggressor or provoker of the incident" (rule 4.423(a)(2)), "[t]he crime was committed because of an unusual circumstance, such as great provocation, that is unlikely to recur" (rule 4.423(a)(3)), "defendant mistakenly believed that he had the right to self-defense" (see rule 4.423(a)(7) ["defendant believed that he or she had a claim or right to the property taken, or for other reasons mistakenly believed that the conduct was legal"]), defendant "ha[d] an insignificant record of criminal conduct" (rule 4.423(b)(1)),

and "defendant was provoked, and the provocation was significant enough to where a reasonable person would lose the capacity for self-control." (See rule 4.423(b)(2) ["defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime"].) The court found true "the circumstance[] in mitigation that [defendant's] prior record is minimal[,]" but otherwise found the requested circumstances in mitigation not true as follows:

> "as far as your first circumstance in mitigation, the victim was an initiator or willing participant or aggressor or provoker of the incident, I reject that. The victim was walking down the street. The crime was committed because of great provocation, that is why the jury found manslaughter. But the provocation that I believe the jury found had nothing to do with the victim on that day. Provocation, I think the jury found, was based upon not just the fight that occurred previously, but upon—based upon the—their mutual girlfriend, who created that provocation. Clearly, I don't think the victim created any provocation as far as this incident.… But I don't find any mental or physical condition that the defendant was suffering from and so I am not going to strike the enhancement [*sic*], as stated in your sentencing brief." [¶] … [¶]

> "I have no information that it is [not] likely to occur again. Based upon the fact that I heard this trial and the defendant was involved in numerous fights, I believe it is going to occur again. I believe the defendant has not just a problem with alcohol—because in his CCR case that was his second DUI—I think it—I think it will occur again so I reject that as well."

## II. Applicable Legal Framework and Standard of Review

Effective January 1, 2022, Senate Bill 567 amended section 1170, restricting a trial court's sentencing discretion, including its ability to impose the upper term for a conviction. (Stats. 2021, ch. 731, § 1.3.) Pursuant to Senate Bill 567, section 1170 now precludes a trial court from imposing a sentence exceeding the middle term for any offense with a sentencing triad, unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or

have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) In other words, Senate Bill 567 provides for a presumptive middle term absent the presence of circumstances in aggravation that justify deviating from the middle term, the facts underlying which have either been stipulated to by the defendant or proven beyond a reasonable doubt at trial. (§ 1170, subd. (b)(1) & (2); *People v. Lopez* (2022) 78 Cal.App.5th 459, 464, disapproved on another ground in *People v. Lynch* (Aug. 1, 2024, S274942) ___ Cal.5th ___ [2024 Cal. LEXIS 4157, pp. 29–30].)

Notwithstanding this limitation, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) Section 1170, as amended by Senate Bill 567, further provides, in pertinent part: "The court shall set forth on the record the facts and reasons for choosing the sentence imposed. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b)(5).)

"A trial court's sentencing decision is subject to review for abuse of discretion." (*People v. Hicks* (2017) 17 Cal.App.5th 496, 512.) A court abuses its discretion when its ruling "falls outside the bounds of reason." (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1226.)

> "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable

person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377.)

## III. Analysis

As a threshold matter, the parties agree that the trial court was permitted to consider the circumstance in aggravation that defendant was armed with or used a weapon at the time of the commission of the crime (rule 4.421(a)(2)) because the jury found true beyond a reasonable doubt that "during the commission of this crime, … [d]efendant … personally used a deadly and dangerous weapon, to wit, a [k]nife, within the meaning of … section 12022[, subdivision (b)(1)]," and the court declined to impose a weapon enhancement (§ 1170, subd. (b)(5)). Defendant contends that the court inappropriately considered that circumstance as two separate circumstances because in listing the circumstances in aggravation, the court said: "I'm going to find that the defendant was armed with a deadly weapon, personally used a deadly weapon at the time of the offense …." We do not understand the court's statement to be considering both defendant having been armed with a deadly weapon *and* having used a deadly weapon. Instead, it appears to us that the court merely corrected its initial comment that defendant was merely *armed* with a deadly weapon, but actually *used* the weapon in the commission of the offense. In any event, circumstances in aggravation and mitigation are not merely a quantitative measure. Sentencing courts have " 'wide discretion' " in qualitatively and quantitatively weighing the factors against each other. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.) A trial court does not merely count the number of circumstances in aggravation and mitigation in exercising its discretion to select among available terms of imprisonment. Even if the court considered that defendant possessed a weapon as a separate circumstance in aggravation, such consideration made no difference; the court certainly understood that defendant's use of a weapon required defendant to have first been armed with a weapon.

12.

Next, the trial court found true three circumstances in aggravation in reliance on its judicial notice of defendant's then-pending violation of probation case. It did not have certified records of prior convictions before it. As noted above, section 1170, subdivision (b)(3) permits courts to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." The People ask us to conclude that a court taking judicial notice[4] of its own records complies with section 1170, subdivision (b)(3). Defendant disagrees, noting that no published case has reached that conclusion, but also offering no authority to the contrary. We agree with the People.

The trial court's reliance on its own judicially noticed records of defendant's driving under the influence of alcohol conviction was proper. (See Evid. Code, § 452, subd. (d).) We reject defendant's assertion the court erred because the records of the driving under the influence conviction were not "certified." (See § 1170, subd. (b)(3).) Defendant has offered no argument and cited no authority that, in this context, the court's reliance on its own judicially noticed records of conviction did not constitute a certified record or its functional legal equivalent. (Evid. Code, §§ 452, subds. (c)–(d), 452.5, subd. (b)(1); *People v. Franklin* (2016) 63 Cal.4th 261, 280; *In re Vicks* (2013) 56 Cal.4th 274, 314.) Indeed, a normal process for a prosecutor to provide a certified record of conviction can include requesting the court clerk's office provide a copy of the court's file reflecting a defendant's conviction and certify that it is correct. (See *People v. Delgado* (2008) 43 Cal.4th 1059, 1066 ["A common means of proving the fact and nature of a prior conviction is to introduce certified documents from the record of the prior court proceeding and commitment to prison, including the abstract of judgment describing the

---

[4] The People suggest the trial court "impliedly judicially noticed" the record of conviction. To be clear, the court *explicitly* took "judicial notice of [Madera Superior Court case No.] CCR05775" and noted both that it had the "actual file of conviction and … that [defendant] was on probation at the time [of the offense]."

prior offense."].)  We find no error in the court avoiding that unnecessary step in this case.

Based on the trial court's review of its own records of defendant's conviction in Madera Superior Court case No. CCR05775, it determined that defendant had been on probation at the time of the offense and, based on defendant's commission of the offense in this case, his performance on probation had been unsatisfactory.  Contrary to defendant's contention, the two circumstances in aggravation regarding defendant having been on probation at the time of the offense (rule 4.421(b)(4)) and his probation performance having been unsatisfactory (rule 4.421(b)(5)) were not unfounded.  The court's circumstances in aggravation determinations were not error.

Next, defendant contends that the trial court disregarded circumstances in mitigation that Espejo was a "provoker of the incident" (rule 4.423(a)(2)) and that "[t]he crime was committed because of an unusual circumstance, such as great provocation, that [was] unlikely to recur" (rule 4.423(a)(3)) which the jury necessarily found true by nature of the voluntary manslaughter verdict.  Defendant's conclusion is incorrect.  He correctly notes that in order to have found defendant not guilty of murder but guilty of voluntary manslaughter, the jury must have determined either that Espejo provoked the altercation or that defendant actually but unreasonably believed he was in imminent danger of being killed or suffering great bodily injury which necessitated use of deadly force.  The only paths to a voluntary manslaughter verdict instructed upon by the court were heat of passion and imperfect self-defense.  However, defendant goes on to conclude that the "verdict shows that the jury must have concluded either [*sic*] that Espejo provoked the altercation, whichever path it took."  The jury could well have concluded that defendant actually but unreasonably believed Espejo presented an imminent danger of killing or inflicting great bodily injury upon defendant or that use of deadly force was necessary to defend against the danger.  Contrary to defendant's contention, the jury did not necessarily conclude that Espejo provoked defendant.  Moreover, all the testimony on the

14.

issue indicated that defendant stopped his vehicle and pursued Espejo. Defendant's own testimony indicated defendant "wanted to fight" Espejo "[b]ecause he was looking for [V.M.]" On that record, the court's refusal to conclude that Espejo provoked or initiated the confrontation was not an abuse of discretion.

As to whether the crime was committed due to an unusual circumstance unlikely to recur, the trial court's determination was not an abuse of discretion. It concluded that defendant had been involved in numerous fights and had a problem with alcohol. Both of those conclusions were supported by the record—defendant was involved in a fight on Easter Day 2022, prior to Espejo's arrival, at which time witnesses indicated he was intoxicated. He had also been convicted of driving under the influence of alcohol. We cannot conclude that the court abused its discretion in refusing to conclude that the offense in this case was committed due to an unusual circumstance unlikely to recur.

Because we conclude there was no error in the trial court's consideration of the circumstances in aggravation and rejection of the proposed circumstances in mitigation, defendant's claim fails.

## DISPOSITION

The judgment is affirmed.