Filed 9/15/21  P. v. Saraei CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAWOOD SARAEI,<br><br>    Defendant and Appellant. | F078496<br><br>(Super. Ct. No. DF012871A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David Wolf, Judge.

Julia J. Spikes, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Michael P. Farrell, Assistant Attorneys General, Carlos A. Martinez and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Dawood Saraei was charged with battery by a prisoner on a nonconfined person (Pen. Code,[1] § 4501.5 [count 1]) and aggravated battery by gassing (§ 4501.1 [count 2]).  In connection with both counts, the information alleged that he was previously convicted of criminal threats (§ 422), a qualifying "strike" offense under the Three Strikes law (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)).  Following trial, the jury found defendant guilty as charged as to count 2 and found true the special allegation.  Pursuant to section 1385, the trial court dismissed count 1.  Defendant was sentenced to a doubled upper term of eight years and awarded 257 days of presentence custody credit.  He was also ordered to pay a $300 restitution fine (§ 1202.4, subd. (b)), a $40 court operations assessment (§ 1465.8, subd. (a)(1)), and a $30 court facilities assessment (Gov. Code, § 70373).  A $300 parole revocation fine (§ 1202.45) was imposed and suspended.

On appeal, defendant makes several contentions.  First, the trial court abused its discretion by imposing the upper term of imprisonment.  Second, before imposing any fines and assessments, the court should have conducted an ability-to-pay hearing pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).  Third, the abstract of judgment must be corrected to reflect a jury conviction.  Finally, defendant asks us to review the materials disclosed at an in camera hearing and determine whether the court properly ruled on his *Pitchess*[2] motion.

In the respondent's brief, the Attorney General concedes that the abstract of judgment must be corrected to show that defendant was convicted by jury.  We agree and accept this concession.  We further conclude:  (1) the trial court's selection of the upper term did not constitute an abuse of discretion; (2) a remand for an ability-to-pay hearing

---

[1]     Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

[2]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

is unwarranted; and (3) the court's ruling on defendant's *Pitchess* motion did not constitute an abuse of discretion.

## STATEMENT OF FACTS

### I.  Correctional Officers Ponce and Mesa

On October 30, 2016, at approximately 9:25 a.m., Ponce and Mesa were monitoring a recreation yard at North Kern State Prison when they saw defendant—an inmate—"walking the opposite direction on the track," a rule violation.  Mesa repeatedly ordered defendant to reverse course, but defendant refused to comply.  Instead, he approached the officers, "waved his arms in the air," "pointed at [them]," and shouted, "You can't tell me what to do mother fuckers."  Defendant was instructed to leave the yard.  As he was "walking towards the yard gate to exit the yard," Ponce and Mesa followed him.  Defendant appeared "angry and belligerent."  After passing through the gate, as a safety precaution, Mesa ordered defendant to place his hands on a fence so that Ponce could handcuff him before entering the "program office area."  When Ponce moved in, defendant "took his hands off" the fence, "turned to his side," and "proceeded to spit on [him]."  Most of the saliva struck Ponce's collar while a "spray of it landed on [his] chin area."  Defendant then "took a bladed stance with his fists closed."  He was subsequently subdued by Ponce.  After being relieved by Mesa, Ponce went to the triage and treatment area.

### II.  Correctional Officer Vue

Vue was in a gun tower when he observed defendant "walking in the wrong direction on the track" and the ensuing argument with Ponce and Mesa.  After Ponce and Mesa escorted defendant through the gate, which Vue opened, defendant "turned around and spit on Officer Ponce."  Vue "saw Officer Ponce wipe something away from his face."

3.

**III.    Correctional Officer Joseph**

Joseph, a member of the prison's investigative services unit, hurried toward the recreation yard in response to an alarm and encountered Mesa attempting to restrain defendant on the ground. She assisted Mesa until additional staffers arrived. Thereafter, Joseph went to the triage and treatment area to visit Ponce, who "was shaking," "wasn't putting sentences together," and "was having a hard time comprehending questions." Ponce eventually revealed that "he got spit on." Joseph "[saw] areas on both sides of [Ponce's] collar" that "appeared to be wet."

## DISCUSSION

**I.    The trial court did not abuse its discretion when it selected the upper term of imprisonment.**

a. *Background*

In a statement in mitigation filed on November 8, 2018, defense counsel asserted that defendant, who was homeless, "has an ongoing seizure disorder affecting his memory" and "has no recollection of the incident which occurred two years ago." Because of this condition, he "can no longer work" "his previous occupation" "as a taxi driver." Defense counsel noted that defendant "had been paroled (as of March 2017)," "5 months after this incident occurred," and "was actively searching for work" "until his arrest for this incident."

In a sentencing brief dated November 9, 2018, the prosecution argued in favor of the upper term of imprisonment highlighting as a circumstance in aggravation, among other things, defendant's "multiple adult convictions":

> "2014 felony conviction for PC 69, Los Angeles
>
> "2016 felony conviction for PC 422(a), Los Angeles
>
> "2016 felony conviction for PC 243.1, Los Angeles
>
> "2018 felony conviction for PC 4501.1, instant case

4.

"Defendant's convictions are all for felonies and are increasing in seriousness. Furthermore, all his convictions except PC 422 were for crimes against peace officers.

"According [to] the probation officer's report in Los Angeles County, Defendant was arrested on 12/5/15 for PC 422 after he brandished a knife and threatened to kill [the victim]. At the jail, Defendant spat in [an officer]'s face and tried to spit on other officers as well. [Citation.] Defendant's conduct in the instant case was not an outlier, and he should be punished accordingly."

The sentencing brief included a copy of the 2016 probation officer's report submitted to the Los Angeles County Superior Court.

The probation officer's report filed November 21, 2018, explained that defendant was 39 years old, was a high school graduate, worked as a taxi driver between 2012 and 2013, and "takes an unknown medication to treat seizures related to epilepsy." Defendant's income consisted of "$190/mo – Food stamps" and "$221/mo – General relief." The report listed a single circumstance in aggravation: defendant's prior performance on felony probation in another case was "unsatisfactory in that he re-offended." It did not list any circumstance in mitigation. The report recommended defendant serve "the mid term of six years in state prison" because "the single aggravating factor is not great enough in weight . . . to justify the upper term."

The sentencing hearing was held on November 21, 2018. Near the outset, the prosecution read the following statement from Ponce:

"Your Honor, I am Officer Ponce. I currently work for the California Department of Corrections and Rehabilitation at North Kern State Prison. I have been with the department for five years, and have worked several posts within the institution which have made me competent enough to be able to perform my duties. I am very well known and well respected by my fellow officers. I am also a husband and a father to two beautiful children.

"Since I was assaulted by the Defendant, . . . my awareness around inmates has increased. I have found myself more distrustful and anxious when I come into contact with inmates, especially during times of conflict when I'm responding to an alarm or trying to quell a situation, whether it be amongst the inmates themselves or another fellow officer.

5.

"Working in the prison system, we come into contact with several individuals on a daily basis, and most of the times we don't know what their charges are or what kind of diseases or illnesses they possess.

"With that said, this assault did not just affect me, it also affected my family. As previously mentioned, I have two children. At the time of the assault my wife was at this time pregnant. Receiving a call from me while at work was always stressful for her, given my profession. So when my wife received the phone call that I was assaulted, she went into a panic mode and stressed heavily, which was not good for her pregnancy.

"Any time we have a staff assault at the institution, there is always a gut wrenching feeling that one of my brothers or sisters can get seriously hurt. I was fortunate enough to have good officers working with me the day of the assault. However, it is not something I would want another officer to endure.

"Anyone can recover from a physical assault, but the Defendant . . . spat on me. In the fear of contracting a disease that I could live with for the rest of my life caused a great amount of stress for me and my family during that time, and still does.

"I was very lucky that wasn't the case. But as stated earlier, I do go into work everyday with an apprehension that the next time I won't get so lucky. [¶] . . . [¶]

"The defendant, by his actions towards me, has shown he has no respect, no morals, no sympathy, and no regard for another person's life or wellbeing. The actions that led to the assault also show he has no concern for rules and laws that need to be followed to maintain order within prison walls and also within the community."

The court commented that it "pulled out the Rules of Court" and "went through every suggested circumstance in aggravation and mitigation" and did not find any circumstance in mitigation. The court did find defendant had previously engaged in violent conduct that indicated a serious danger to society, and prior convictions and/or sustained juvenile petitions that were numerous or of increasing seriousness. It remarked:

"[California Rules of Court, rule 4.423](a)(3) is whether there was unusual circumstances [that are unlikely to recur]. And those concern me

with regards to his mental health and his seizures.  But the second half of that says unlikely to reoccur.  And I don't think that applies in this case because the fact he seems to have a continuing habit of using violence.  That seems to be his only history.

"And the 422 of all the strikes is probably one of the more minor strikes, depending on the threat, but in this case a knife was also used.  So he's got the 422 with a knife.  He's got a PC 69, and the 243.1, a prior gassing with one victim and attempt on others, which is shocking, surprising, or similar to the case we have had today.  [¶] . . . [¶]

"[California Rules of Court, rule 4.423](b)(2) is a mental or physical condition that significantly reduces culpabilities.  I think that would apply the first time someone did this.  The fact that we have a third now similar type of event – and I did look at the [2016] probation report provided by [the prosecution].  And the victim in that case said that he was removing handcuffs from the defendant when the defendant became belligerent, spat on the right side of his face, and then the defendant attempted to spit on other arresting officers but was unsuccessful.  The victim in that case was treated by medical staff at Santa Monica Hospital and UC[LA] Hospitals.  He had his blood drawn and his face cleaned.  And the victim at that point stated that he felt the defendant was a threat to the community and needed to serve jail time for his actions.

"While we're on the subject, [the 2016 probation officer's report] says that the defendant was on probation at the time of the commission of the instant matter.  It does not appear as though previous attempts to detur [*sic*] his criminal behavior have been effective.

"At this point that's the prior probation report.  The defendant has posed himself as an immediate threat to the community.

"The facts that he approached an unsuspecting victim with a knife with no apparent – no apparent warrant, I'm not sure what they mean by that, no apparent motive perhaps, is very disturbing and suggests he is unsuitable for community supervision.

"The defendant needs to understand the seriousness of his actions.  He also needs to understand he'll be held accountable for his actions.

"And [the 2016 probation officer's report] talk[s] about no circumstances in mitigation.  They show none and list six in aggravation.  I think three apply specifically to that case. . . .

7.

"It says the crime involved great violence, great bodily harm, threat of great bodily harm, or other act disclosing a high degree of cruelty, viciousness, and callousness. Again, that's the 422 with a knife. . . . [D]espite having been previously convicted of a gassing and having been told don't do this, he continued to do it. [¶] . . . [¶]

"[The fourth listed circumstance in aggravation] says the defendant has engaged in violent conduct that indicates he's a serious danger to society. That certainly continues to apply at this point when we['re] talking about his past behavior.

"[The fifth listed circumstance in aggravation], the defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous and increasing . . . [in] seriousness.

"The 422 with a knife does appear to be the most serious, but then again he's continuing to do the same behavior. [¶] . . . [¶]

". . . I think if this was his first [battery conviction], you know, if we went back in time and this was the first, I'd agree . . . it was a temper tantrum. It doesn't seem like any prior beef with these officers. He thinks – seems like he was upset and he didn't want them to do what they were doing, and he wasn't going to let them be the boss.

"My concern is that seems to be his modus operandi. We've got a PC 69, which we don't know the facts of. But, you know, that's . . . a crime of either threat or force to detur [sic] an officer in the execution of their duties. We've got a 243.1, which is surprisingly identical to this one. And then we have – we also have the interesting thing about the knife. I can't remember which is which. One is a – in a library[,] a public place, and the other happens to be something at LAX. . . .[3] But it seems like he picks up crimes where the public would have a right to be located and safe. . . ."

The probation officer who authored the 2018 report was present at the hearing and acknowledged that he did not read Ponce's statement and was unaware of many details at the time of said report.

---

**3** According to the 2016 probation officer's report, the acts underlying defendant's 2014 conviction for obstructing or resisting an executive officer (§ 69) occurred at the airport while the acts underlying his 2016 conviction for criminal threats (§ 422) occurred at a library.

The court pronounced:

> "I will say I had planned on following the probation report. I debated significantly between midterm and upper term. Prior to coming on the bench, however, I've now heard Officer Ponce's statement, which he is allowed to give pursuant to the constitution.

> "I will, because of the defendant's prior behavior which is exactly the same thing incorporating all my comments, I will sentence him to the upper term of eight years."

b. *Analysis*

"When a sentence of imprisonment is imposed, . . . the sentencing judge must select the upper, middle, or lower term on each count for which the defendant has been convicted, as provided in section 1170[, subdivision ](b) and these rules." (Cal. Rules of Court, rule 4.420(a); see § 1170, subd. (b).) "In exercising his or her discretion in selecting one of the three authorized terms of imprisonment referred to in section 1170[, subdivision ](b), the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The relevant circumstances may be obtained from the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any evidence introduced at the sentencing hearing." (Cal. Rules of Court, rule 4.420(b); see § 1170, subd. (b).) "Insofar as imposition of the upper term is concerned, '[a]n aggravating circumstance is a fact that makes the offense "distinctively worse than the ordinary." [Citations.] Aggravating circumstances include those listed in the sentencing rules, as well as any facts "statutorily declared to be circumstances in aggravation" [citation] and any other facts that are "reasonably related to the decision being made." [Citation.]' [Citations.]" (*People v. Hicks* (2017) 17 Cal.App.5th 496, 512; see *People v. Moberly* (2009) 176 Cal.App.4th 1191, 1196 ["Neither section 1170 nor the California Rules of Court attempt to provide an inclusive list of aggravating circumstances."].)

" 'A trial court's decision to impose a particular sentence is reviewed for abuse of discretion and will not be disturbed on appeal "unless its decision is so irrational or arbitrary that no reasonable person could agree with it." ' [Citation.]" (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1182.) "A single factor in aggravation is sufficient to support the trial court's exercise of discretion in imposing an upper term sentence." (*People v. Kidane* (2021) 60 Cal.App.5th 817, 827.)

Here, the court expressly considered the factors listed in California Rules of Court, rules 4.421 ("Circumstances in aggravation") and 4.423 ("Circumstances in mitigation"). While it concluded that none of the circumstances in mitigation were applicable, it deemed significant two circumstances in aggravation. (See *People v. Moberly*, *supra*, 176 Cal.App.4th at p. 1196.) First that defendant had previously engaged in violent conduct that indicated a serious danger to society, i.e., he "approached an unsuspecting victim with a knife" in a library with "no apparent motive." (See Cal. Rules of Court, rule 4.421(b)(1).) Second, that he had three prior felony convictions: "a PC 69," "a crime of either threat or force to detur [*sic*] an officer in the execution of their duties"; a "422 with a knife"; and a "243.1, a prior gassing with one victim and attempt on others." (See *id.*, rule 4.421(b)(2).) The court was particularly troubled with defendant's history of hostility toward law enforcement. The acts underlying his present conviction for aggravated battery against Ponce by gassing (§ 4501.1) were "surprisingly identical to" those underlying his 2016 conviction for battery against a custodial officer (§ 243.1). (See *People v. Kidane*, *supra*, 60 Cal.App.5th at pp. 823, 827 [the defendant was convicted of gross vehicular manslaughter while intoxicated, i.e., under the influence of marijuana; at the sentencing hearing, the court pointed out " 'the fact that [the defendant] was driving previously under the influence of marijuana' "].) In view of defendant's

"continuing to do the same behavior," the court selected the upper term of imprisonment. We do not conclude that the court acted either irrationally or arbitrarily.[4]

## II. A remand for an ability-to-pay hearing is unwarranted.

At the sentencing hearing, the court ordered defendant to pay the statutory minimum restitution fine of $300 (§ 1202.4, subd. (b)), a court operations assessment of $40 (§ 1465.8, subd. (a)(1)), and a court facilities assessment of $30 (Gov. Code, § 70373). A $300 parole revocation fine (§ 1202.45) was imposed and suspended. Defense counsel did not object to any fine or assessment.

On appeal, defendant contends that "the trial court violated [his] federal and state due process rights by imposing fines at sentencing without determining if he could afford to pay" (capitalization omitted) and "the case requires a remand for a hearing on [his] ability to pay the fines." This argument is based on *Dueñas*, *supra*, 30 Cal.App.5th 1157, which held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or fees. (*Id*. at p. 1164.) To the extent *Dueñas* applies to this case, defendant did not forfeit review of the issue because he lacked the statutory ability to object to the fines and assessments imposed. Section 1202.4, subdivisions (c) and (d) only permit a party to raise an ability-to-pay objection when the court imposes a restitution fine above the statutory minimum. Here, the court ordered defendant to pay $300. (See § 1202.4, subd. (b)(1) ["If the person is convicted of a felony, the fine shall not be less than three hundred dollars ($300) and not more than ten thousand dollars ($10,000)."].) Since the court imposed the minimum amount, defendant lacked the statutory ability to object under the governing law at the time of his sentencing hearing. (Cf. *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1154.) In addition, the statutes that authorize the

---

[4] To the extent defendant suggests that we reweigh the circumstances presented at the sentencing hearing in his favor, we decline to do so. (See *People v. Carmony* (2004) 33 Cal.4th 367, 377.)

11.

imposition of the court operations assessment and the court facilities assessment do not permit a defendant to make any kind of ability-to-pay objection. (See § 1465.8, subd. (a)(1); Gov. Code, § 70373.)

We conclude that a remand is unwarranted. This court has written extensively about *Dueñas*. (See, e.g., *People v. Montes* (2021) 59 Cal.App.5th 1107; *People v. Son* (2020) 49 Cal.App.5th 565; *People v. Lowery* (2020) 43 Cal.App.5th 1046; *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*).) Even if we agreed with *Dueñas*, any error arising from the court's failure to make an ability-to-pay finding is harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139-140 (*Johnson*).) " 'Ability to pay does not necessarily require existing employment or cash on hand.' [Citation.] '[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's present ability but may consider a defendant's ability to pay in the future.' [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]" (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837, italics omitted; accord, *Aviles*, *supra*, 39 Cal.App.5th at p. 1076.) "Every able-bodied person committed to the custody of the Secretary of the Department of Corrections and Rehabilitation is obligated to work as assigned by department staff . . . ." (Cal. Code Regs., tit. 15, § 3040, subd. (a); see § 2700.) "State prison inmates who perform assigned work are compensated for it." (*People v. Frye* (1994) 21 Cal.App.4th 1483, 1487.) Depending on the prisoner's skill level, prison wages range from $12 to $56 per month. (Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).) The state may garnish between 20 and 50 percent of those wages to pay the restitution fine. (§ 2085.5, subds. (a), (c).)

Here, we are able to infer from the record that defendant "has the ability to pay the fines and fees imposed upon him from probable future wages, including prison wages" over the course of his sentence. (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076.) At the time

of the sentencing hearing, defendant was 39 years old.  Defendant is a high school graduate and worked as a taxi driver between 2012 and 2013, demonstrating "some past income-earning capacity."  (*Johnson*, *supra*, 35 Cal.App.5th at p. 139.)  Although defendant purportedly suffers from seizures that ended his stint as a taxi driver, he "actively search[ed] for work" during a prior release on parole.  During this incident, defendant tried to fight the officers, i.e., he "took a bladed stance with his fists closed," and fought attempts to restrain him, demonstrating no physical impairment.  (See *People v. Frye*, *supra*, 21 Cal.App.4th at p. 1487 ["If defendant was ineligible for prison work assignment, it was incumbent upon him to alert the court to any such disability."].)  Even assuming defendant could only work for the minimum prison wage of $12 per month, given the length of his sentence, he would have sufficient time to earn the amount needed to pay the fines and assessments.  (See *People v. Jones*, *supra*, 36 Cal.App.5th at p. 1035.)  "In our view, this forecloses a meritorious inability to pay argument."  (*Ibid.*)  Therefore, because defendant "has ample time to pay . . . from a readily available source of income while incarcerated" (*Johnson*, *supra*, 35 Cal.App.5th at p. 140), any error arising from the court's failure to make an ability-to-pay finding was harmless beyond a reasonable doubt.

**III.**   **The abstract of judgment must be corrected to show that defendant was convicted by jury.**

Following trial, the jury convicted defendant of aggravated battery by gassing (count 2) and found true the allegation that he was previously convicted of a qualifying "strike" offense under the Three Strikes law.  However, the abstract of judgment shows that defendant was convicted by plea.  This clerical error must be corrected to show that defendant was convicted by jury.  (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [courts have inherent power to correct clerical errors in abstracts of judgment].)

13.

**IV. The trial court did not abuse its discretion when it concluded that confidential personnel files contained limited discoverable material.**

a. *Background*

Defense counsel filed a *Pitchess* motion for discovery of Joseph's, Mesa's, and Vue's confidential personnel files. The parties stipulated that review would be limited to documentation regarding three specific incidents. On October 19, 2018, the court conducted an in camera hearing, found discoverable material as to Mesa only, ordered disclosure subject to a protective order, and sealed the reporter's transcript.

On appeal, defendant asks us to "review the materials disclosed at the in-camera hearing on the *Pitchess* motion" (some capitalization omitted) and "determine whether the superior court abused its discretion in refusing to disclose the requested information in the officer's [*sic*] personnel files." The Attorney General does not oppose this request.

b. *Analysis*

" 'A criminal defendant has a limited right to discovery of a peace officer's personnel records. [Citation.] Peace officer personnel records are confidential and can only be discovered pursuant to Evidence Code sections 1043 and 1045.' [Citation.]" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 180; see *People v. Mooc* (2001) 26 Cal.4th 1216, 1220 (*Mooc*) [California Legislature codified *Pitchess* motions].) "[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant." (*People v. Gaines* (2009) 46 Cal.4th 172, 179 (*Gaines*), citing Evid. Code, § 1043, subd. (b).) "Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.]" (*Gaines*, *supra*, at p. 179.)

"If the trial court concludes the defendant has . . . made a showing of good cause, the custodian of records should bring to court all documents 'potentially relevant' to the

defendant's motion" (*Mooc*, *supra*, 26 Cal.4th at p. 1226) and "the court must review the requested records in camera to determine what information, if any, should be disclosed" (*Gaines*, *supra*, 46 Cal.4th at p. 179). "Subject to statutory exceptions and limitations . . . the trial court should then disclose to the defendant 'such information [that] is relevant to the subject matter involved in the pending litigation.' " (*Mooc*, *supra*, at p. 1226, quoting Evid. Code, § 1045, former subd. (a).) "A trial court's ruling on a motion for access to law enforcement personnel records is subject to review for abuse of discretion." (*People v. Hughes* (2002) 27 Cal.4th 287, 330.)

Here, the trial court created an adequate record of the October 19, 2018 in camera hearing. We also examined the confidential personnel files. Based on our review, the court did not fail to disclose materials "so clearly pertinent to the issues raised by the *Pitchess* discovery motion that failure to disclose them was an abuse of *Pitchess* discretion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.) Thus, we uphold the ruling.

## DISPOSITION

The judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting that defendant was convicted by jury rather than by plea and send a certified copy thereof to the appropriate authorities.

DETJEN, J.

WE CONCUR:

HILL, P. J.

PEÑA, J.

15.