Filed 7/1/25  P. v. Aguilar CA2/1
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B316432 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA093196) |
| v. | |
| ANDREW DEAN AGUILAR, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Affirmed in part, reversed in part, and remanded with instructions.

Maura F. Thorpe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

At the conclusion of a court trial, defendant Andrew Aguilar was convicted of one count of assault with a deadly weapon. The trial court also found true a special allegation that Aguilar personally inflicted great bodily injury on the victim. The court sentenced Aguilar to an aggregate prison term of seven years, which consists of the four-year upper term for the assault conviction and a three-year enhancement for the great bodily injury finding.

On appeal, Aguilar argues that amendments to the determinate sentencing law in Penal Code[1] section 1170, subdivision (b) that require proof beyond a reasonable doubt of aggravating factors apply retroactively to his sentence, and that his sentence violates the revised law because the trial court did not find beyond a reasonable doubt the facts giving rise to two aggravating factors he asserts the trial court used to justify imposition of the four-year upper term.

Aguilar further maintains this error was not harmless. Aguilar claims had he been aware of the revised law's new procedures, he would have developed the record to establish a reasonable doubt as to one of the two aggravating circumstances, that is, whether the assault was unprovoked. He further claims we should remand for a new sentencing hearing because the record does not clearly indicate that the trial court would have imposed the upper term based only on the other aggravating factor—that the victim's injuries were substantial, permanent, and ongoing, especially given the court's finding that Aguilar's minimal prior criminal history was a mitigating factor.

---

[1] Undesignated statutory citations are to the Penal Code.

We issued an opinion in which we agreed with Aguilar that the new amendments to the determinate sentencing law apply retroactively to this case, and that the trial court had not complied with the revised law's new requirement that all aggravating factors warranting imposition of an upper term sentence be found true beyond a reasonable doubt. (See *People v. Aguilar* (Aug. 28, 2023, mod. Sept. 18, 2023, B316432) [nonpub. opn.] [2023 WL 5524731, at pp. *1, *3 (*Aguilar*).) Reviewing the trial court's statements at the sentencing hearing, we concluded that the court's decision to impose the upper term rested on only one aggravating factor—the nature and extent of the victim's injuries—and that the court made a remark concerning lack of provocation merely to explain why certain mitigating factors were inapplicable. (See *id.* at pp. *5–7.) We further concluded that affirmance of the judgment was appropriate because the court would have found that aggravating factor true beyond a reasonable doubt had it been aware of the revisions to the determinate sentencing law. (See *id.* at pp. *1, *3, *7, *9.)

The Supreme Court granted Aguilar's petition for review and transferred the matter back to us with directions to vacate our decision and "reconsider the cause in light of *People v. Lynch* (2024) 16 Cal.5th 730."

As set forth in our Discussion, part A, *post*, we still conclude the amendments to section 1170, subdivision (b) apply retroactively to cases not yet final. As explained in Discussion, part C, *post*, we still conclude the trial court relied on only one aggravating factor in selecting the upper term, that is, the victim's injuries were substantial, permanent, and ongoing. We also conclude, beyond a reasonable doubt, that the trial court would have found that aggravating factor true under the beyond-

3

a-reasonable doubt standard.  (Discussion, part D, *post*.)  As we explain in Discussion, part B, *post*, however, *Lynch* announced a nuanced standard of harmless error.  Under *Lynch*'s clarification of that harmless error standard, we conclude "the record [does not] clearly indicate that the [trial] court would have found [the] upper term justified had it been aware of its more limited discretion" under the revised law.  (See *Lynch*, *supra*, 16 Cal.5th at p. 743; Discussion, part E, *post*.)  Accordingly, we reverse the sentence, affirm the remainder of the judgment, and remand the matter to the trial court to reconsider its imposition of the upper term sentence.

## PROCEDURAL BACKGROUND[2]

On December 4, 2019, the People filed an information charging Aguilar with one count of attempted murder, in violation of section 664 and section 187, subdivision (a) (count 1); and one count of assault with a deadly weapon, in violation of section 245, subdivision (a)(1) (count 2).  The People alleged that

---

[2] We derive our description of the trial court proceedings and of the evidence presented below in part from admissions made by the parties in their appellate briefing.  (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 668, 674 [criminal case in which the Court of Appeal stated:  " 'An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case.' "]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)  We summarize only those facts pertinent to our disposition of this appeal.

in attempting to murder the victim, Aguilar personally used a deadly and dangerous weapon within the meaning of section 12022, subdivision (b)(1).  As to both counts, the People averred Aguilar "personally inflicted great bodily injury upon" the victim within the meaning of section 12022.7, subdivision (a).  Aguilar pleaded not guilty to both counts and denied all allegations and enhancements.

Aguilar waived a jury trial and was tried in October 2021.  Although the trial court acquitted Aguilar of the attempted murder charge, it found Aguilar guilty of assault with a deadly weapon.  In connection with the assault conviction, the court found true the special allegation in section 12022.7, subdivision (a) that Aguilar personally inflicted great bodily injury on the victim.

On November 4, 2021, the trial court sentenced Aguilar to an aggregate prison term of seven years, comprised of the upper term of four years for the assault conviction and a consecutive three-year term pursuant to section 12022.7, subdivision (a).  On November 16, 2021, Aguilar timely appealed from the judgment.

On August 28, 2023, we issued an opinion affirming the judgment.  (*Aguilar*, *supra*, B316432 [2023 WL 5524731, at pp. *1, *9].)  On September 18, 2023, we modified our opinion to include a new footnote and denied Aguilar's petition for a rehearing.

On November 15, 2023, the Supreme Court granted Aguilar's petition for review.  On May 14, 2025, the Supreme Court transferred the matter to us with "directions to vacate [our] decision and reconsider the cause in light of *People v. Lynch* (2024) 16 Cal.5th 730."  We then vacated our decision.  Neither

5

party filed a supplemental brief addressing the impact of *Lynch*, and the deadline for doing so has expired.[3]

## FACTUAL BACKGROUND

Aguilar resided with his father and grandfather in a home two houses away from J.A. and his family.

On July 30, 2019, J.A.'s family had a barbeque and pool party at his house. J.A.'s nephew, A.A., arrived at the party at around 5:30 or 6:00 p.m. At around 8:30 p.m., A.A. was ready to leave the party. A.A. and J.A. walked out to A.A.'s truck, which was parked in the driveway.

As A.A. and J.A. were standing near the driver's side of A.A.'s truck, Aguilar approached and asked A.A. either: (1) "Bitch, you called me a bitch?"; or (2) "Who's a bitch?" Aguilar then punched A.A. on his left cheek. The two men began to fight, with each throwing punches at the other.

At one point, A.A. gained an advantage by positioning himself on top of Aguilar while holding Aguilar down with A.A.'s left arm. A.A. asked Aguilar, "What's your problem?" A.A. and Aguilar yelled and cursed at each other. A.A. asked Aguilar, "Have you had enough?" A.A., while still on top of Aguilar and restraining him, turned to tell J.A. to call the police.

---

[3] (See Cal. Rules of Court, rule 8.200(b)(1) ["Within 15 days after finality of a Supreme Court . . . order transferring a cause to a Court of Appeal for further proceedings, any party may serve and file a supplemental opening brief in the Court of Appeal. Within 15 days after such a brief is filed, any opposing party may serve and file a supplemental responding brief."]; *id.*, rule 8.360(a) [providing that, with certain exceptions not relevant here, rule 8.200 applies to criminal appeals].)

6

Aguilar then slashed at A.A. with a knife.  A.A. was cut in his abdomen, on his forearm, and on his bicep.  At trial, A.A. provided testimony indicating that after Aguilar stabbed him, A.A. saw his "[g]uts come out" and A.A. noticed that certain arteries had been "[c]ut."  A.A. further testified that upon receiving medical treatment, A.A. learned that Aguilar had cut the nerves and tendons in A.A.'s right arm.  A.A. testified that at the time of trial, he continued to have difficulty moving certain fingers and "still ha[d] a lot of nerve pain."  The parties agree that because A.A.'s "injuries were very serious," A.A. "requir[ed] surgery and some long term rehabilitation."

A.A. testified that he was taken to the hospital in an ambulance that evening.  Aguilar was also taken to the hospital.

## DISCUSSION

Aguilar contends that certain amendments to the determinate sentencing law effective January 1, 2022 apply retroactively to his case, the trial court did not comply with those amendments because it did not find beyond a reasonable doubt the two aggravating factors Aguilar claims the court relied upon in imposing the upper four-year term for the assault conviction, and the trial court's noncompliance with the amended law was not harmless because the court would not have found true beyond a reasonable doubt one of the two aggravating factors had the court known of the requirements of the amended statute.

In our Discussion below, we first describe the amendments to the determinate sentencing law, conclude they apply retroactively to Aguilar's case, and find the trial court did not comply with the amended statute's requirement that all aggravating factors in support of an upper term sentence be found true beyond a reasonable doubt.  (Discussion, part A, *post*.)

7

We also discuss *Lynch*'s test for determining whether noncompliance with the amendments is harmless. (Discussion, part B, *post*.)

Additionally, we address—and again reject—Aguilar's argument that the trial court's decision to impose the upper term rested on two aggravating factors rather than just one factor—the nature and extent of the victim's injuries. (Discussion, part C, *post*.) We next hold the first part of *Lynch*'s harmless error test is satisfied because we conclude, beyond a reasonable doubt, that had the trial court known of the amended statute, it would have found, beyond a reasonable doubt, that the victim's injuries were substantial, permanent, and ongoing. (Discussion, part D, *post*.) As to the second part of *Lynch*'s harmless error test, the record does not clearly indicate the trial court would have imposed the upper term based on this one aggravating factor had it been aware of its restricted discretion under the revised sentencing law. We thus reverse the sentence and remand to allow the trial court to exercise its discretion whether to impose the upper term under the amendments to the determinate sentencing law. (Discussion, part E, *post*.) We affirm the remainder of the judgment.

## A.   Senate Bill No. 567 Amended the Determinate Sentencing Law Effective January 1, 2022 and Applies Retroactively to This Case; the Trial Court Did Not Comply With Senate Bill No. 567's Requirements

Section 245, subdivision (a)(1) provides in pertinent part: "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be

8

punished by imprisonment in the state prison for two, three, or four years . . . ."  (§ 245, subd. (a)(1).)

When the trial court sentenced Aguilar on November 4, 2021, section 1170, subdivision (b) provided in relevant part:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . .  The court shall select the term which, in the court's discretion, best serves the interests of justice.  The court shall set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."  (Stats. 2020, ch. 29, § 14; *id.* at § 44 [indicating the statute took "effect immediately," i.e., on Aug. 6, 2020].)

On the date of Aguilar's sentencing, a trial court could " ' "utilize" ' " a " ' "circumstance" ' " to " ' "support its sentencing choice" ' " so long as the existence of that factor was " ' "established by a preponderance of the evidence.  [Citations.]" [Citation.] . . . [Citation.]'  [Citation.]"  (See *People v. Hicks* (2017) 17 Cal.App.5th 496, 512 (*Hicks*).)

Several weeks before the sentencing hearing, the Legislature enacted Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567), which amended section 1170 effective January 1, 2022.  (See Stats. 2021, ch. 731, § 1.3 [filed with the Sec'y of State on Oct. 8, 2021]; Cal. Const., art. IV, § 8, subd. (c)(2) [providing that this version of § 1170 became effective on Jan. 1, 2022].)  As amended by Senate Bill No. 567, section 1170, subdivision (b) provides in relevant part that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms," "[t]he court may impose a

9

sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (See Stats. 2021, ch. 731, § 1.3 [§ 1170, subds. (b)(1) & (b)(2)].)

Our Supreme Court has held, " '(i) [I]n the absence of a contrary indication of legislative intent, (ii) legislation that ameliorates punishment (iii) applies to all cases that are not yet final as of the legislation's effective date.' [Citation.]" (See *People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207.) The Attorney General concedes (1) Senate Bill No. 567 ameliorates punishment and (2) there is no indication the Legislature intended for these amendments to operate prospectively only.

We agree with the Attorney General and conclude Senate Bill No. 567 applies to cases that were not yet final on the legislation's effective date—i.e., January 1, 2022. (See *Lynch*, *supra*, 16 Cal.5th at pp. 742, 748–749 [observing "[t]he Legislature did not expressly declare whether the 2022 amendment to section 1170 . . . applies prospectively or retroactively," accepting the Attorney General's concession that Senate Bill. No. 567 applies retroactively to cases not yet final on appeal, and noting "[o]ther appellate courts have uniformly reached the same conclusion"].) Because Aguilar's judgment is not yet final, Senate Bill No. 567's amendments to section 1170, subdivision (b) apply here. (See *People v. Lopez* (2019) 42 Cal.App.5th 337, 341–342 [indicating that a judgment in a

10

criminal case is not final until the defendant has "exhaust[ed] his appeal rights"].)

Having concluded Senate Bill No. 567 applies retroactively to this case, we further conclude the trial court did not comply with the legislation's new requirement that all aggravating factors warranting imposition of the upper term sentence be found true beyond a reasonable doubt. Next, we address *Lynch*'s harmless error test.

**B. Under *Lynch*, One Aggravating Factor Can Justify Imposition of the Upper Term Sentence, and Noncompliance With Senate Bill No. 567's Requirement That the Factfinder Find All Aggravating Factors True Beyond a Reasonable Doubt Is Harmless Only If *Chapman*'s Beyond-a-Reasonable-Doubt and *Gutierrez*'s Record Clearly Indicates Standards Are Satisfied**

As a preliminary matter, we acknowledge Senate Bill No. 567 permits a trial court to impose the upper term sentence "only when there *are circumstances* in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term . . . ." (See Stats. 2021, ch. 731, § 1.3, italics added [§ 1170, subd. (b)(2)].) *Lynch* recognized, "[N]othing in section 1170[, subdivision ](b)(2) prohibits the court from imposing an upper term sentence based on a single, properly proven aggravating circumstance *if*, in the court's discretion, *that circumstance alone justifies* a sentence exceeding the middle term. We do not read the current statute's reference to 'circumstances' in the plural as requiring a different conclusion." (*Lynch*, *supra*, 16 Cal.5th at p. 764; *ibid.* [explaining that under

11

§ 7, subd. (a), " '[w]ords used in the singular number [in the Penal Code] include[ ] the plural, and the plural the singular' "].)

*Lynch* also announced a two-step harmless error test that applies to "a case where the judgment is not yet final[ and] sentence [was] imposed under former section 1170[, subdivision ](b) . . . ." (See *Lynch, supra,* 16 Cal.5th at pp. 742–743.) At the first step, we "apply the *Chapman* standard of review," meaning the sentence "must be reversed [and the case] remanded unless the reviewing court concludes beyond a reasonable doubt that [the factfinder], applying that same standard, would have found true all of the aggravating facts upon which the [trial] court relied to conclude the upper term was justified . . . ." (See *Lynch,* at pp. 742–743, citing *Chapman v. California* (1967) 386 U.S. 18.) At the second step, we apply "the *Gutierrez* standard," that is, we determine whether "the record . . . clearly indicate[s] that the [trial] court would have found an upper term justified had it been aware of its more limited discretion" under Senate Bill No. 567. (See *Lynch,* at pp. 743, 776–777, citing *People v. Gutierrez* (2014) 58 Cal.4th 1354.) Affirmance is appropriate under the latter standard only if the record "clearly indicates that [the trial court] would have found aggravating circumstances sufficiently weighty to 'justify' an upward departure from the legislative mandate for no more than a middle term sentence." (See *Lynch, supra,* 16 Cal.5th at p. 777.)

Regarding the legislative mandate for the middle term sentence, our high court explained that before Senate Bill No. 567 amended section 1170, subdivision (b), "a sentencing court [had] broad discretion to select among three terms and impose a sentence that in its judgment served the interests of

12

justice. [Citation.] The current statute narrows that authority by creating a presumption against the upper term, which may be overcome only if the required facts are properly proven and the court concludes that term is justified. These changes circumscribe the trial court's previously broad discretion to select whichever of the three terms of imprisonment serves the interests of justice." (See *Lynch*, *supra*, 16 Cal.5th at p. 773.)

As to the application of the *Gutierrez* standard in this context, *Lynch* stated, " '[W]hen the applicable law governing the defendant's sentence has substantively changed after sentencing, it is almost always speculative for a reviewing court to say what the sentencing court would have done if it had known the scope of its discretionary powers at the time of sentencing.' [Citation.]" (*Lynch*, *supra*, 16 Cal.5th at p. 776.) " '[M]ere reliance on the length of the original sentence and attendant decisions, such as imposing consecutive sentences, imposing middle or upper term sentences, or declining to strike enhancements, is not sufficient to provide a clear indication of what a sentencing court might do on remand if it had been fully aware of the scope of its discretionary powers.' [Citation.]" (*Id.* at p. 777.) Likewise, a "trial court's finding that an upper term sentence was 'appropriate' " does not meet this prong of the harmless error test. (See *ibid.*)

Conversely, our high court observed certain "definitive statements . . . clearly indicate [a trial court] would not impose a lesser sentence under any circumstances." (See *Lynch*, *supra*, 16 Cal.5th at p. 777.) In particular, *Lynch* identified the following as cases that would satisfy the *Gutierrez* standard: (1) a death penalty case where the "trial court observed that the defendant was ' "the worst of the worst," ' that he ' "show[ed] absolutely no remorse" ' and that ' "[i]t's as if he has no soul" ' ";

13

and (2) a case in which " 'the sentencing court announces that it is aware of forthcoming legislation and then explains how it would exercise its discretion under that legislation.' " (See *Lynch*, at p. 777, quoting *People v. Flores* (2020) 9 Cal.5th 371, 432 & *People v. Salazar* (2023) 15 Cal.5th 416, 431.)

**C.   Contrary to Aguilar's Assertion the Trial Court Relied on Two Aggravating Factors, We Conclude From the Record That the Trial Court Relied Upon Only One Aggravating Factor, That Is, the Nature and Extent of the Victim's Injuries**

To recap, Aguilar claims, "At sentencing, the trial court stated as the basis for imposing the upper term that the altercation was unprovoked and that [A.A.'s] injuries were substantial, permanent, and ongoing." He argues, "Because these circumstances in aggravation were neither found true beyond a reasonable doubt nor admitted by [Aguilar], [his] sentence does not comply with . . . amended Penal Code section 1170, subdivision (b) which constitutes error." Aguilar further contends the trial court's noncompliance with amended section 1170, subdivision (b) was not harmless because if he had known that Senate Bill No. 567's procedures applied to his case, "[d]efense counsel would have [had] a reason to develop . . . evidence" showing that J.A. and A.A. had taunted Aguilar at some point prior to the altercation. He also argues, "It cannot be said that on this record, [the trial court would have] found true beyond a reasonable doubt that the altercation was unprovoked."

As explained below, we reject Aguilar's claim that the trial court's imposition of the upper term was based on lack of provocation as an aggravating factor. Rather, the sentence

14

rested on a single aggravating factor—the victim's substantial, permanent, and ongoing injuries.[4]

At no point during the sentencing hearing did the trial court state that lack of provocation for Aguilar's assault constituted an aggravating factor. Rather, the trial court stated:

---

[4] Aguilar argued in a petition for rehearing of our original decision issued in 2023 that Government Code section 68081 entitled him to a rehearing because in their appellate briefing, both parties assumed the trial court found the unprovoked nature of the attack constituted an aggravating factor. (*Aguilar, supra*, B316432 [2023 WL 5524731, at p. *5, fn. 6].) Although we have vacated our prior opinion in accordance with our high court's instructions, we reject Aguilar's assertion that we are required to solicit supplemental briefing from the parties before determining whether the trial court found that lack of provocation was an aggravating factor. "Under [Government Code section 68081], '[t]he parties need only have been given an opportunity to brief the issue decided by the court, and the fact that a party does not address an issue, mode of analysis, or authority that is raised or fairly included within the issues raised does not implicate the protections of [Government Code] section 68081.' [Citation.]" (*Save Laurel Way v. City of Redwood City* (2017) 14 Cal.App.5th 1005, 1015–1016, fn. 9.) Our reading of the record was, and is, fairly within the issues raised by the parties' briefing because it stems from an assessment of Aguilar's premise that the trial court relied upon two aggravating factors.

Also, given our prior opinion, the parties were on notice of our conclusion that the trial court had relied on only one aggravating factor—the nature and extent of the victim's injuries. Neither party filed a supplemental brief disputing that interpretation of the record after the Supreme Court transferred the appeal back to us to reconsider our decision in light of *Lynch*.

15

"In this case the court's considered the California Rules of Court 4.421; circumstances and aggravation [*sic*] and circumstances in mitigation. Based on the evidence that the court heard I believe that based on the evidence that this was an unprovoked attack.  There was no evidence to support any other theory that was presented.  The victim's injuries were substantial, and he was essentially gutted for lack of a better term.

"One of the reasons the defendant was acquitted of attempted murder is because the court found based on the state of the evidence that he didn't have that specific intent to kill, but it does not minimize the nature of the injuries suffered by the victim.  These are permanent and ongoing injuries to the victim, and circumstances of mitigation are defendant has a minimal prior record, if any.

"Court will impose a sentence as follows:  As to count 2, probation is denied.  The court is going to select the high terms [*sic*] of four years as the court finds the circumstances in aggravation outweigh those in mitigation."

Because the trial court did not identify lack of provocation as an aggravating factor, it appears that the court referenced lack of provocation to explain why particular mitigating factors were not applicable.  Specifically, California Rules of Court, rules 4.423(a)(2) and 4.423(a)(3) identify the following *mitigating* factors:  "The victim was an initiator of, willing participant in, or aggressor or provoker of the incident;" and "[t]he crime was committed because of an unusual circumstance, such as great

16

provocation, that is unlikely to recur." (See Cal. Rules of Court, rule 4.423(a)(2) & (a)(3).)

Given that Aguilar's trial counsel asserted in his opening statement that J.A. and A.A. had called Aguilar names prior to the attack, it is unsurprising that the trial court deemed it necessary to explain why otherwise potentially applicable mitigating factors identified in California Rules of Court, rules 4.423(a)(2) and 4.423(a)(3) were inapplicable in sentencing Aguilar. This contrasts with the trial court's finding that A.A.'s injuries were substantial, permanent, and ongoing, which is an aggravating factor provided in rule 4.421(a)(1).[5]

---

[5] California Rules of Court, rule 4.421(a)(1) identifies the following as a circumstance in aggravation: "The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, rule 4.421(a)(1).) Although Aguilar argues A.A.'s "injuries were already factored into [Aguilar's] punishment" vis-à-vis the three-year enhancement for great bodily injury, he acknowledges that A.A.'s injuries may constitute a circumstance in aggravation to "the extent [they] exceed" the degree of injury required for imposition of that enhancement. (See also Cal. Rules of Court, rule 4.420(g) ["[A] fact charged and found as an enhancement may be used as a reason for imposing a particular term only if the court has discretion to strike the punishment for the enhancement and does so."]; 3 Witkin, Cal. Crim. Law (5th ed. 2025) Punishment, § 406 ["The significant or substantial physical injury standard of P.C. 12022.7 [(i.e., the great bodily injury enhancement statute)] does not require that the victim suffer permanent, prolonged, or protracted disfigurement, impairment, or loss of bodily function."].)

California Rules of Court, rule 4.421's list of aggravating factors does not identify lack of provocation as one such circumstance. (See Cal. Rules of Court, rule 4.421.) Indeed, Aguilar admits this is a "factor[ ] not set out in the rules . . . ." Aguilar's assertion that the trial court "recite[d] the two circumstances in aggravation" does not give full import to the context of the court's statements quoted above. Instead, he asks us to interpret the court's statements as relying on an unenumerated aggravating factor in addition to the serious and permanent nature of the victim's injuries.[6] As we have explained, we disagree. The trial court merely was explaining why certain otherwise potentially applicable mitigating factors expressly identified in the California Rules of Court are not implicated by this case.[7]

---

[6] We acknowledge that California Rules of Court, rule 4.421(c) provides that trial courts may rely upon aggravating factors that are not enumerated expressly in that rule. (See Cal. Rules of Court, rule 4.421 & rule 4.421(c) ["Circumstances in aggravation include factors relating to the crime and factors relating to the defendant. [¶] . . . [¶] Any other factors statutorily declared to be circumstances in aggravation or that reasonably relate to the defendant or the circumstances under which the crime was committed."].)

[7] On its face, newly added section 1170, subdivisions (b)(1) and (b)(2) require a finding of beyond a reasonable doubt only for aggravating circumstances. (See § 1170, subds. (b)(1) & (b)(2).) Mitigating circumstances would thus remain subject to the preponderance of evidence burden of proof. (See *Hicks, supra,* 17 Cal.App.5th at p. 512 [indicating that prior to Senate Bill No. 567, " ' "[t]he circumstances utilized by the trial court to support its sentencing choice need[ed] [to] be established by [only] a preponderance of the evidence" ' "]; see also *People v.*

18

Lastly, in the respondent's brief, the Attorney General states, "In imposing an upper term sentence in this case, the trial court properly relied upon the evidence establishing the aggravating factor of unprovoked attack." Insofar as the Attorney General believes the trial court found lack of provocation was an aggravating factor supporting the upper term sentence, we disagree and are not bound by the Attorney General's description of the trial court's ruling. (See *People v. Kim* (2011) 193 Cal.App.4th 836, 847 ["We are not required to accept the Attorney General's concession . . . ."].)

**D.**   **We Conclude, Beyond a Reasonable Doubt, That The Trial Court Would Have Found Beyond a Reasonable Doubt That A.A.'s Injuries Were Substantial, Permanent, and Ongoing**

Aguilar acknowledges there "may have been sufficient proof to satisfy the beyond a reasonable doubt standard" as to the trial court's finding that A.A.'s "injuries were 'substantial' and 'permanent and ongoing[.]' " He acknowledges that "there was evidence in the form of testimony and medical record[s] indicating that [A.A.]'s injuries from the knife were extensive." Aguilar also states that A.A.'s "injuries were very serious, requiring surgery and some long term rehabilitation." Furthermore, A.A. provided testimony indicating he saw his

_____

*Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1305, fn. 28 [noting that "the preponderance standard" is synonymous with " 'more likely than not' "].) For that reason, we conclude that Senate Bill No. 567 had no impact on the validity of the trial court's determination that lack of provocation was not a mitigating factor in this case.

19

"[g]uts come out" after Aguilar stabbed him, Aguilar had cut A.A.'s arteries and the nerves and tendons in A.A.'s arm, and more than two years after the altercation, A.A. still had nerve pain and difficulty moving his fingers. (See Factual Background, *ante*.)

Given Aguilar's own acknowledgments and the trial evidence, we conclude, beyond a reasonable doubt, that if the trial court had been aware of Senate Bill No. 567's new restrictions on imposition of the upper term, the court would have found this aggravating factor true beyond a reasonable doubt. This conclusion satisfies part one of *Lynch*'s harmless error test. (See *Lynch*, *supra*, 16 Cal.5th at pp. 742–743 [explaining that the first part is a special application of "the *Chapman* standard of review"]; cf. *id.* at p. 775 [observing that an error is harmless under this part of the test "if we can conclude beyond a reasonable doubt 'that the . . . [aggravating factor] was uncontested and supported by overwhelming evidence' "].)

## E. The Record Does Not Clearly Indicate the Trial Court Would Have Found That the Sole Aggravating Factor Justified an Upward Departure from Senate Bill No. 567's Presumption In Favor of the Middle Term Sentence

As we noted in Discussion, part B, *ante*, even if *Chapman*'s harmless error test is satisfied—as it is here—we must still determine whether *Gutierrez*'s harmless error test is also satisfied. Simply put, the *Gutierrez* standard asks whether the record "clearly indicates that [the trial court] would have found aggravating circumstances sufficiently weighty to 'justify' an upward departure from the legislative mandate for no more than

20

a middle term sentence." (See *Lynch*, *supra*, 16 Cal.5th at p. 777.)

At the sentencing hearing, the trial court did not make any "definitive statements . . . clearly indicat[ing]" the court would have imposed the upper sentence had it been aware of Senate Bill No. 567's presumption in favor of the middle term. (See *Lynch*, *supra*, 16 Cal.5th at p. 777.) In selecting the four-year upper term for the assault conviction, the court merely noted the case involved "an unprovoked attack"; the victim, who was "essentially gutted," suffered "substantial," "permanent and ongoing injuries"; although Aguilar "was acquitted of attempted murder . . . because . . . he didn't have th[e] specific intent to kill, [that fact] does not minimize the nature of the injuries suffered by the victim"; Aguilar had "a minimal prior record, if any"; and "the circumstances in aggravation outweigh those in mitigation."

Although the trial court's analysis demonstrates its imposition of the upper term sentence was a proper exercise of discretion under the pre-Senate Bill No. 567 version of section 1170, subdivision (b), "it does not necessarily speak to how the court would have exercised its discretion under the weight of the presumptive middle term maximum sentence that currently exists." (See *Lynch*, *supra*, 16 Cal.5th at p. 777.)[8]

---

[8] We note that in the respondent's brief, the Attorney General contends that the trial court's noncompliance with revised section 1170, subdivision (b) was harmless in part because in imposing the upper term, the trial court "*could have* reasonably relied on [the prosecutor's] argument" that Aguilar sustained a prior battery conviction for "punch[ing] a family member in the mouth in an unprovoked attack . . . ." (Italics added.) Because the record does not show the trial court in fact relied on the prosecutor's representations regarding Aguilar's

21

Because the trial court's noncompliance with Senate Bill No. 567 was not harmless under *Gutierrez*, we reverse the sentence and remand to the trial court for further proceedings. (See *Lynch*, *supra*, 16 Cal.5th at pp. 777–778 [indicating that is the proper remedy].) On remand, "[t]he court retains its discretion to impose [the] upper term sentence if it concludes that [the aforementioned] properly proved [aggravating] circumstance"—the nature and extent of A.A.'s injuries— "justif[ies] such a sentence" under the current version of section 1170, subdivision (b). (See *Lynch*, at p. 778.) "If it cannot so conclude, [the court] may impose no more than a middle term" for the assault conviction. (*Ibid.*)

---

prior battery conviction, the Attorney General's argument fails to establish harmless error under the *Gutierrez* standard. (See *Lynch*, *supra*, 16 Cal.5th at pp. 776–777 [explaining that affirmance under the *Gutierrez* standard requires a finding that the trial court made "the kind of definitive statements that . . . clearly indicate it would not impose a lesser sentence under any circumstances"].)

## DISPOSITION

We reverse the sentence, affirm the remainder of the judgment, and remand the matter to the trial court for further proceedings as described in Discussion, part E, *ante*.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.